40 F.3d 287
 Jack DUNN, Appellant,
v.
Bob CARROLL; Donald Gunn, Members of the Board of Directors
of the Florissant Valley Fire Protection District; William
Bogue, Chief of the Florissant Valley Fire Protection
District; Florissant Valley Fire Protection District, Appellees.
 No. 93-2758.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1994.
Decided Nov. 15, 1994.
 
 Richard Barry, St. Louis, MO, argued, for appellant.
 Leo W. Nelson, St. Louis, MO, argued, for appellees.
 Before MORRIS SHEPPARD ARNOLD, Circuit Judge, and JOHN R. GIBSON, and WELLFORD,* Senior Circuit Judges.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Jack Dunn, formerly an employee of the Florissant Valley Fire Protection District, appeals from a summary judgment against him in his civil rights case against the District, two members of its board, and its fire chief. The District suspended Dunn for refusing to remove from his uniform an American flag patch, which did not conform to the District's uniform code. He was later fired for calling the fire chief a "liar" during a public discussion of his suspension. Dunn sued the District and its officials under 42 U.S.C. Sec. 1983 (1988), claiming that they had violated his First Amendment right to free speech. After reviewing the magistrate judge's Review and Recommendation, the district court granted the District and its officials summary judgment. We affirm the district court's judgment as to the termination claim, but reverse and remand as to the suspension claim.
 
 
 2
 In November 1990 Jack Dunn was an administrative assistant to Chief William Bogue of the Florissant Valley Fire Protection District. Chief Bogue was relatively new to the District, having succeeded Chief Patterson.
 
 
 3
 Dunn testified that during the tenure of Chief Patterson certain employees of the District had been permitted to sew American flag patches on the shoulders of their uniforms. Though Dunn was not personally given permission by Chief Patterson, he testified that while he was drinking with two members of the District board at a tavern, one of them gave him permission to wear the patch. According to Dunn, some indefinite time elapsed between the conversation at the tavern and his sewing the patch on: "[W]hen the subject came up, he said go ahead, but I never did--at that time I never--I never--we were all drinking and consequently it kind of slipped my mind--and for a number of time, and then when this thing started about the Desert Storm, that's when it all came back ... so I said, yeah, I'm going to put them on."
 
 
 4
 In January 1990 the District adopted a new uniform code prescribing a uniform that did not include the flag patch and stating: "Articles of clothing not mentioned are not permitted." According to Dunn, he had flag patches sewed onto his uniforms during the fall of 1990.
 
 
 5
 Dunn testified that one day in November 1990, Chief Bogue asked Dunn who had given him permission to wear the flag patch. Dunn said, "I guess the board did." Dunn told Chief Bogue that Chief Patterson had said the employees could wear flags. Chief Bogue replied, "Not since I've been here." Later in the day, the fire marshall, Wheadon, called Dunn in and told Dunn that Chief Bogue wanted the flag off Dunn's shirts by the next day. Dunn testified that he replied: "[If] he wants them flags off ... tell him I'll take them off in front of Channel 2, Channel 4, Channel 5, the American Legion, the VFW, and the DAV, which I'm a li[f]e member of."
 
 
 6
 Dunn reported to work the next day with the flag patch still on his shirt. He told Wheadon that he would not take the flags off his uniforms without a written order. His stated reasons were that he had permission from Chief Patterson to put the patch on and that removing it could be considered flag desecration: "I said, 'They passed a resolution[1] that anybody who got caught desecrating the flag on the fire department property could be prosecuted, fire department property, fire department flag poles, lights, et cetera, could be prosecuted under the amendment, the First Amendment....' " Dunn showed up at the District board meeting that night and attempted to discuss the flag patch issue, but was told that it was a personnel matter and would therefore be discussed in closed session.
 
 
 7
 The next day, Dunn was summoned to a meeting with the fire marshall, Wheadon, the fire chief, Bogue, and the assistant chief, Burns. Bogue told Dunn he would be suspended two days for refusing to take the flag off his shirt.
 
 
 8
 After his suspension, Dunn attended another Board meeting. At the meeting, there was a question from the floor about Dunn's suspension, which had become something of a cause celebre, bringing television cameras, reporters and a number of off-duty fire fighters to the meeting. After Chief Bogue gave his account of the incident, Dunn stood up, pointed at Chief Bogue, and said, "You're a liar."
 
 
 9
 Shortly after this incident he received a letter of discharge from the District. Though the letter gave no reason, Chief Bogue testified that the board fired Dunn for insubordination.
 
 
 10
 Dunn sued the District, Chief Bogue and two members of the board under 42 U.S.C. Sec. 1983, alleging violation of his First Amendment rights, first in connection with the suspension, and then in connection with his discharge.
 
 
 11
 The Magistrate Judge recommended granting summary judgment against Dunn, reasoning that even if Dunn's wearing of the patch was speech protected by the First Amendment, the District's interest in maintaining discipline in its ranks outweighed Dunn's interest in wearing the patch and in calling Chief Bogue a liar. The Magistrate Judge also concluded that the defendants were entitled to qualified immunity, since there was not a clearly established right to wear an extraneous emblem on a fireman's uniform or to call one's superior a liar. The District Court reviewed the Magistrate Judge's recommendation and entered judgment in accordance with it.
 
 
 12
 On appeal Dunn renews his argument that his behavior was protected by the First Amendment and that the defendants violated his civil rights by punishing him.
 
 
 13
 We review de novo the district court's entry of summary judgment, Brandenburg v. Allstate Ins. Co., 23 F.3d 1438, 1440 (8th Cir.1994), affirming only if the record shows no genuine issue as to any material fact. Fed.R.Civ.P. 56(c).
 
 
 14
 A disciplinary action against a public employee violates his First Amendment rights if: (1) the conduct for which he was punished can be "fairly characterized as constituting speech on a matter of public concern," Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); and (2) the interest of the employee in commenting on the matter of public concern outweighs the public employer's interest in promoting its efficiency by prohibiting the conduct. Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968). Both of these questions are issues of law for the court to decide. Shands v. City of Kennett, 993 F.2d 1337, 1342 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994).
 
 
 15
 Since Dunn asserts violation of his rights on two different occasions, we will examine the suspension and the firing separately.
 
 
 16
 The first question is whether Dunn's conduct in refusing to take off the flag patch can be fairly characterized as "speech on a matter of public concern."
 
 
 17
 While the District portrays the crucial conduct as insubordination, earlier case law persuades us that we must go further and examine the propriety of the order Dunn disobeyed. In Leonard v. City of Columbus, 705 F.2d 1299 (11th Cir.1983), cert. denied, 468 U.S. 1204, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984), several policemen were fired for willfully disobeying a resolution of their employer requiring them to wear a flag patch on their uniforms. The district court held that they could be fired for engaging in "a calculated show of contempt for the City authority and a demonstration of refusal to obey its lawful ordinances, rules and commands." Id. at 1303. However, the Eleventh Circuit held that refusing to obey an order that implicates an employee's First Amendment rights is not a sufficient reason for disciplining the employee, even in a paramilitary organization such as a police or fire department. The Leonard court refused to sanction a theirs-not-to-reason-why rule for such employees, but held that the command must be justified: "We must go beyond asserting the need for 'discipline' in 'paramilitary' or 'quasi-military' organizations and identify the true interest the Department has in suppressing the speech and conduct that resulted in appellants' dismissal." Id. at 1305 (citations omitted). Therefore, we must question whether the command Dunn disobeyed was justified or unjustified, i.e., whether the District had a right to enforce its uniform code in the face of Dunn's wish to wear a flag patch.
 
 
 18
 Dunn claims that he wished to wear a flag patch as a comment on the situation in the Persian Gulf, where the United States was building up for the attack on Iraq, which took place in January 1991. Of course, Dunn's wearing of a flag patch is not actually "speech," but rather nonverbal conduct that was meant to express an idea. Non-verbal conduct implicates the First Amendment if the person engaged in the conduct intends it to convey a "particularized message" and if the likelihood was great that the message would be understood by those who viewed it. Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989). Although the Supreme Court has "not automatically concluded ... that any action taken with respect to our flag is expressive," id. at 405, 109 S.Ct. at 2540, we must view the action in the context of concurrent political events. Id. We conclude that wearing a flag during a war ordinarily conveys a "particularized message" well enough to pass the test.
 
 
 19
 Having decided Dunn's patch should be considered "speech", we think it obvious that the "speech" pertained to a matter of public interest, satisfying the first test under Connick v. Myers.
 
 
 20
 The second inquiry is whether the District's interests in having and enforcing a uniform requirement outweighs Dunn's interest in wearing a flag patch that does not conform to the prescribed uniform. Our sister circuits have dealt with similar questions in Immigration and Naturalization Service v. Federal Labor Relations Authority, 855 F.2d 1454 (9th Cir.1988), and United States v. Federal Labor Relations Authority, 955 F.2d 998 (5th Cir.1992). In both these cases INS employees claimed a right to wear union paraphernalia on their INS uniforms, and the INS prohibited the "adornments." The courts held that, assuming the union message was a matter of public concern, the INS uniform requirement served important employer interests. 855 F.2d at 1466; 955 F.2d at 1006. The Ninth Circuit stated: "The INS anti-adornment regulation furthers its interest in the efficient functioning of the department because it makes the inspectors more readily recognizable to the public, encourages esprit de corps, and subordinates personal preferences in favor of the overall group mission." 855 F.2d at 1466. The Fifth Circuit noted that these interests are heightened in a paramilitary situation. 955 F.2d at 1006 (citing Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986)). The Ninth Circuit also observed that the non-verbal nature of the employees' expression affected the balancing of interests, since the INS regulation was not directed to suppressing expression, but only had an incidental effect on expression. 855 F.2d at 1466. In contrast, in Leonard the Eleventh Circuit held that officers fired for publicly removing required flag patches from their uniforms were wrongfully punished for engaging in protected activity. 705 F.2d at 1306.
 
 
 21
 More generally, in our own circuit we have enumerated the factors relevant to weighing a public employer's interest against an employee's right to express himself. We consider: (1) the need for harmony in the workplace; (2) whether the job requires a close working relationship between the speaker and co-workers who might be offended by the speech; (3) the time, place and manner of the employee's expression; (4) the context of the dispute; (5) the degree of public interest in the speech; and (6) whether the speech interfered in the employee's ability to do his job. Shands, 993 F.2d at 1344.
 
 
 22
 The need for harmony and the close working relationships did exist in this case. Dunn worked closely with Chief Bogue, since his title was "Administrative Assistant to the Chief." Moreover, the Shands court specifically recognized that the "need for harmony in the work place" is heightened in a public safety service. 993 F.2d at 1344. Shands also pointed out that it is for the jury to determine the existence of predicate facts, such as whether the conduct caused disruption in the workplace. Id. at 1342. The District made some showing that Dunn's wearing the flag interfered with harmony in the District; Chief Bogue stated that Dunn's actions, if unpunished, would have led to possible morale and disciplinary problems in the District. Dunn, on the other hand, testified that another employee had worn a flag patch for two years, up to the time of Dunn's suspension, without incident. This conflicting evidence creates an issue of fact as to whether Dunn's conduct impaired the harmony of his workplace. The context of the dispute is the military buildup preceding the Gulf War. The time and place inquiries weigh in favor of the District, for it was only seeking to regulate Dunn's appearance at work, leaving him free to wear the flag if he cared to when off duty. See INS, 855 F.2d at 1466. Dunn's intended message was squarely within the "center of public debate," which weighs in his favor. It is difficult to say that Dunn's flag patch prevented him from doing his job. The District had previously permitted employees to wear flag patches, and there is no evidence that it disrupted the District's ability to provide fire protection to its public. Moreover, the allegation that another employee was permitted to wear the patch up to the time of Dunn's suspension would be powerful evidence that the patch was not disruptive.
 
 
 23
 In addition to the Shands analysis, it is also relevant to observe that the regulation in issue here is not directed at suppressing speech, but has only an incidental effect on expression. See INS, 855 F.2d at 1466.
 
 
 24
 In reviewing these factors, we conclude that there is a question of fact on the issue of whether Dunn's flag patch created disruption in the workplace. We may not resolve this factual issue on summary judgment. See Schiller v. Moore, 30 F.3d 1281, 1284 (10th Cir.1994). Therefore, we must reverse the summary judgment on the suspension claim.
 
 
 25
 In contrast, we conclude that the District did not violate Dunn's rights in firing him for calling Chief Bogue a liar at a public meeting. We have held that "when a person does initially engage in protected ... speech on matters of a public concern, [he] may not use this protection ... to also level personal attacks on ... officials ... of a public institution." Smith v. Cleburne County Hosp., 870 F.2d 1375, 1383 (8th Cir.), cert. denied, 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 100 (1989). When what started out as protected debate turns into "caustic personal attacks" against colleagues in a public service workplace, the speech is no longer deemed relevant to "a matter of public concern," id. at 1382, and is therefore not protected under Connick. Id. We consider this rule entirely applicable to the circumstances of Dunn's firing.
 
 
 26
 Having determined that the district court erred in entering judgment against Dunn on the merits of his suspension claim, we must determine whether the District and its officials were entitled to qualified immunity. Under the rules of qualified immunity, an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known that his actions violated clearly established law. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Greiner v. City of Champlin, 27 F.3d 1346, 1351 (8th Cir.1994). Because the Pickering- Connick test is a fact-intensive balancing test, a public employee's "asserted First Amendment right 'can rarely be considered "clearly established" for purposes of ... qualified immunity.' " Grantham v. Trickey, 21 F.3d 289, 293 (8th Cir.1994) (citations omitted). However, if the defendants have failed to produce evidence weighing against permitting the employee's expressive conduct, or if there is a question of fact as to whether they reasonably believed the conduct to be disruptive, see Waters v. Churchill, --- U.S. ----, 114 S.Ct. 1878, 1889, 128 L.Ed.2d 686 (1994) (O'Connor, J., writing for plurality); Shands, 993 F.2d at 1342, then the defendants are not entitled to qualified immunity. Grantham, 21 F.3d at 294-95 & n. 4. Here, we conclude that there is an issue of fact as to whether Dunn's failure to comply with the uniform requirement affected District discipline or workplace relations. Therefore, the District and its officials are not entitled to qualified immunity.
 
 
 27
 We affirm the district court's judgment on the termination claim, but reverse the summary judgment on the suspension claim.
 
 
 
 *
 The HONORABLE HARRY W. WELLFORD, Senior Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The board had passed a resolution in 1989 providing, inter alia: "Whereas the citizens and voters of the Florissant Valley Fire District have a considerable amount of monies invested in the flags, flag poles and flag pole lights.... Now therefore, be it resolved, that we, the board of directors of the Florissant Valley Fire Protection District, call for full accounting and full prosecution of any and all desecration of flags, flag poles and flag pole light [sic]...."