Kevin **TINDLE**, Appellant,

v.

Lou **CAUDELL**, individually and in his capacity as Chief of Police for the City of Little Rock; City of Little Rock, Arkansas, Appellees.

No. 94–3474.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1995.

Decided June 9, 1995.

Robert Alston Newcomb, Little Rock, AR, argued (Edward Glenn Adcock, on the brief), for appellant.

William Clark Mann, Little Rock, AR, argued, for appellee.

Before WOLLMAN and MURPHY, Circuit Judges, and DAVIS,* District Judge.

DIANA E. MURPHY, Circuit Judge.

Kevin Tindle appeals from the judgment of the district court[1] dismissing his action brought under 42 U.S.C. § 1983. He claims that his constitutional rights were violated by his thirty day suspension from the Little Rock Police Department (LRPD). We affirm.

## I.

Most of the facts are not disputed. Tindle has been an officer of the LRPD since 1980.[2] On October 30, 1992, he attended a Halloween party at the Fraternal Order of Police Lodge dressed in blackface, wearing bib overalls and a black, curly wig, and carrying a watermelon. The party was not an official police function, but was attended by other off-duty members of the police department and their guests. After the party, Lou Caudell, the Little Rock Chief of Police, was made aware that several African–American members of the police force were offended by Tindle's appearance at the party and felt belittled and ridiculed by it. They had not attended the party, but had heard later about Tindle's costume. Several African–American officers resigned from the Fraternal Order of Police.

Caudell was concerned about possible racial friction or disharmony within the department, and he was aware of existing racial divisions among LRPD officers. Ron Lanoue, the Regional Director of the National Conference of Christians and Jews, had been hired by the department on a contract basis to conduct prejudice reduction workshops beginning in February 1992. After the Halloween party, Caudell met with members of the Fraternal Order of Police and the Black Police Officers Association to discuss the incident. He also requested that Lanoue conduct a special session of workshops to address concerns that arose from it, and he took steps to establish a biracial committee within the LRPD to deal with racial tensions in the department. Finally, he initiated an Internal Affairs investigation of the incident.

Based on the Internal Affairs investigation and consultations with the chain of command under which Tindle served,[3] Caudell determined that he had violated LRPD rules. The rules prohibit a police officer from engaging in conduct that could result in justified criticism of the officer or the department (Rule 1/4003.00) and from ridiculing, mocking, taunting, or deriding any person (Rule 1/4006.00).[4] The chief suspended Tindle for thirty days without pay.

Tindle appealed the suspension to the Little Rock Civil Service Commission and appeared at a hearing before the Commission. He testified[5] that he wore the "Farmer Brown" costume "to have a good time." He stated that he realized that the costume had humiliated and offended a number of African–American officers and admitted that it had "caused quite a bit of controversy at the Police Department." He claimed to have apologized to the members of the force who were offended by his actions. The Commission specifically found that Tindle violated LRPD Rules 1/4003.00 and 1/4006.00 and upheld the suspension.

Tindle then brought this action for damages and equitable relief against Caudell and

* The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

2. He was originally hired on December 27, 1976 but resigned effective June 14, 1978. He was rehired on July 28, 1980 and has been employed by the LRPD since that date.

3. The four supervisors in Tindle's chain of command each evaluated the evidence, concluded that his behavior violated LRPD rules, and recommended a thirty day suspension.

4. Tindle was also charged with a violation of Rule 1/4005.01 related to the October 30, 1992 party and a separate rules violation based on an alleged racial incident that occurred on October 13, 1992. The Civil Service Commission did not uphold these charges.

5. His testimony before the Commission was adopted in his Answers to Interrogatories as being the reasons underlying his appearance at the party. (App. 69).

the City of Little Rock, alleging first amendment and due process violations. The district court granted summary judgment for defendants on the merits, as well as ruling in Caudell's favor on his qualified immunity defense.

On appeal, Tindle asserts that the district court improperly granted defendants summary judgment on the merits.[6] He argues that his suspension violated the first amendment because wearing a costume is a form of entertainment, which is protected expression, and a material fact issue exists as to whether his conduct caused an actual disruption in the police force. He also argues that the LRPD rules are unconstitutionally vague and overbroad. Caudell and the city respond that Tindle's conduct was not protected expression because it did not address a matter of public concern and the interests of the LRPD outweigh any expressive interest that Tindle might have. They also state that the LRPD rules are not overbroad, either on their face or as applied.

## II.

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). We review a grant of summary judgment de novo.

■ What one chooses to wear can communicate an expressive message to others. For example, a flag patch worn by a fireman on his uniform during the Persian Gulf crisis was understood to express an opinion about events in the Middle East. *Dunn v. Carroll,*

40 F.3d 287, 291 (8th Cir.1994). Wearing a particular outfit or costume is non-verbal conduct that is protected as speech under the first amendment if it is intended to convey a "particularized message" and if the likelihood is great that the message will be understood by those who view it. *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989); *Dunn,* 40 F.3d at 291. History suggests that wearing blackface is conduct that may be replete with possible meanings.

In this case, however, Tindle does not suggest that he wore his costume to express a message. He has not, for example, asserted a claim that he wore it to incite debate, to alienate others, to comment on an issue, or even to send a racist message. In fact, he testified to the Civil Service Commission that he wore it strictly to "have a good time." He specifically denied having the intent to belittle, taunt, mock, degrade or offend anyone. He claimed that the costume was his girlfriend's idea, inspired by the movie "Silver Streak" in which Gene Wilder hid from gangsters by wearing black makeup, but conceded that his "Farmer Brown" costume was not intended to portray or impersonate either Gene Wilder or any character from the movie. Any message that the other party goers might have understood was not intended by Tindle when he dressed in his costume.

Tindle claims that he wore the costume to entertain the other party guests and that live entertainment is inherently expressive, protected conduct. He cites in support *Iota Xi Chapter of Sigma Chi Fraternity v. George Mason University,* 993 F.2d 386 (4th Cir. 1993). In that case, a fraternity member dressed as an offensive caricature of an African–American woman for the fraternity's "ugly woman contest," staged as a charity event in the school cafeteria. The Fourth Circuit held that the contest, as a skit, was a low-grade theatrical production entitled to first amendment protection; as entertainment it was inherently expressive. *Id.* at 391. The court reasoned that some forms of entertainment, such as music, motion pic-

---

**6.** No argument is presented on appeal related to the qualified immunity determination of the district court.

tures, theater performances and dancing, are "so inherently expressive as to fall within the First Amendment's ambit regardless of their quality." *Id.* at 390. Tindle, on the other hand, was not involved in any sort of theatrical performance or skit, or even a costume contest.

The Fourth Circuit also agreed with George Mason University that the fraternity skit was intended to impart a message that "the University's concerns [about racial and sexual stereotypes], in the Fraternity's view, should be treated humorously," and it was likely "that at least some of the audience viewing the skit would understand the Fraternity's message of satire and humor." *Id.* The record in this case contains no hint of any message that Tindle intended to express by wearing the costume. He does not claim to have been satirizing any LRPD attitudes about race or making any statement about it. The absence of any asserted message lessens the expressive attributes of Tindle's costume.

█ Even if Tindle's appearance at the party is considered expressive conduct or speech, it is not entitled to absolute protection. First amendment claims asserted by public employees are analyzed under a two-step test. The first question is whether the employee's speech addresses a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983). If it does, then the court must balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968).

While Tindle argues generally that his appearance at the party in blackface is "speech on a matter of public concern," *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689, he does not explain why or specify any particular matter of public concern. Whether an employee's speech addresses a matter of public concern is "determined by the content, form, and

context of a given statement, as revealed by the record as a whole." *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690. Tindle does not claim he intended to comment on any issue of interest to the public. He instead intended simply to entertain the other officers and their guests at the party by wearing an amusing costume. Amusing other guests at a private party with no showing of any intended message is not speech on a matter of public concern.

Tindle's reliance on *Berger v. Battaglia*, 779 F.2d 992 (4th Cir.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986), is misplaced. In that case, an off-duty police officer regularly performed a musical show in public in which he sang and played various instruments. The performance featured popular music from the first half of the twentieth century and included an impersonation of the singer Al Jolson, for which he wore blackface makeup and a black wig. The Fourth Circuit determined that the performances were a "form of artistic expression," *id.* at 993, and were of interest to the public that attended and sometimes paid to see and hear them. *Id.* at 999. As such, they were speech on a matter of public concern. *Id.* Artistic expression before a public audience is quite different from a decision to wear a costume to a private Halloween party. Here there were no public performances, and there is little in the record to suggest there was much entertainment value in Tindle's appearance.[7]

Tindle argues that the public concern test does not fit cases involving an employee whose expression did not take place at work and was not about work. *See Flanagan v. Munger*, 890 F.2d 1557 (10th Cir.1989). In *Flanagan*, the Tenth Circuit applied a different test where police officers had ownership interests in a video store that rented some adult movies. The chief of police asked the officers to remove the sexually explicit films and issued them a written reprimand for violation of department conduct regulations. The threshold question in the court's analysis was whether they had engaged in "protected

---

7. Tindle testified that people at the party laughed at his appearance, and one told him his costume was "cute." He indicated that he did not alter his normal manner of speaking or walking, and that the costume itself was "the extent of it."

expression." *Id.* at 1564. Tindle suggests that this question be substituted here for the question of public concern. The facts of this case are different from *Flanagan,* however. Although Tindle's situation also did not arise at work, he wore the costume at a party of off-duty police officers, held at the Fraternal Order of Police Lodge. This function was related to his work and caused adverse consequences at work. The *Flanagan* court said that the offering of adult videos by a private store was "clearly not speech as [a public] employee." *Id.* at 1564. Given the nature of the forum used by Tindle, it cannot be said that his costume was unrelated to his employment. Here there is no reason to depart from the normal *Connick* test. Moreover, application of the protected expression test would not change the outcome.

■ The public concern test functions both to prevent every employee grievance from becoming a constitutional case, *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691, and to protect a public employee's right as a citizen to speak on issues of concern to the community. *Id.* at 146–47, 103 S.Ct. at 1690. Tindle has not shown, however, that his costume related "to any matter of political, social, or other concern to the community." *Id.*

■ This case resembles *Pruitt v. Howard County Sheriff's Department,* 96 Md.App. 60, 623 A.2d 696, *cert. denied,* 332 Md. 143, 630 A.2d 723 (1993). There police officers were disciplined for violating certain rules, including engaging in conduct unbecoming an officer. They had parodied "Hogan's Heroes" by uttering German words and phrases, clicking their heels together, and raising their arms in Nazi-like salutes. The court concluded that this speech was private. It did not "contain any allegations of wrongdoing or present issues of public concern to the community. Instead, it was intended for amusement, bereft of any political content.... The conduct occurred in a private setting—generally away from public view—a fact that supports our conclusion that the speech is private. Here the speech and conduct remain unprotected because they did not concern a matter of public interest but instead indicated a personal bias." *Id.* 623 A.2d at 701–02 (citations omitted).

Since Tindle has not met his burden of showing that his appearance at the party expressed a matter of public concern, it is not really necessary to move on to the *Pickering* balancing test, but its application weighs in favor of the police chief and the city. The primary focus of that test is to determine "whether the speech undermines 'the effective functioning of the public employer's enterprise.'" *Barnard v. Jackson County, Mo,* 43 F.3d 1218 (8th Cir.1995) (citing *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987)). There are six interrelated factors to use in weighing the competing interests of the employer and employee:

> 1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties.

*Shands v. City of Kennett,* 993 F.2d 1337, 1344 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). The weight given to any one factor depends on the circumstances of each case. *Id.*

Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer. *Crain v. Board of Police Commissioners,* 920 F.2d 1402, 1409 (8th Cir.1990); *Hughes v. Whitmer,* 714 F.2d 1407 (8th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Moreover, "when close working relationships are essential to fulfilling public responsibilities," an employer's judgment may be given a "wide degree of deference." *Connick,* 461 U.S. at 151–52, 103 S.Ct. at 1692.

The need for harmony and close working relationships between co-workers in a police

department is of great importance. *Hughes,* 714 F.2d at 1419. In this case, it is undisputed that some African–American officers of the LRPD were offended by Tindle's costume. That race relations were a concern of the LRPD is evidenced by the fact that it had retained an expert to conduct prejudice reduction workshops. Moreover, Tindle did not intend to convey a message by his costume. He wore it in a private setting, limiting any possible public interest in his expression. Although Tindle was off-duty during the party, his appearance was witnessed by police officers and their guests. There was the potential for more direct consequences to the department than if he had attended a family or neighborhood party in the costume. Under all the circumstances Tindle's interest in appearing as he chose at the party does not outweigh the countervailing interests in maintaining discipline and harmonious working relationships within the LRPD.

Tindle also asserts that summary judgment was inappropriate because he says there is a factual dispute over whether his costume caused actual disruption of the LRPD's internal operation. He argues that the case should be remanded for trial. The defendants argue in response that there is no material issue of fact because legally a showing of potential disruption within the internal workings of the department is enough. They say they produced such evidence, and it has not been refuted by Tindle.

■ A showing of actual disruption is not always required in the balancing process under *Pickering.* *Shands v. City of Kennett,* 993 F.2d 1337 (8th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994); *Germann v. City of Kansas City,* 776 F.2d 761, 765 (8th Cir.1985), *cert. denied,* 479 U.S. 813, 107 S.Ct. 63, 93 L.Ed.2d 22 (1986). Government predictions of disruption used to justify restrictions of employee speech are given "greater deference" than predictions used to justify restrictions on speech by the public. *Waters v. Churchill,* — U.S. —, —, 114 S.Ct. 1878, 1887, 128 L.Ed.2d 686 (1994). A government employer's reasonable prediction of disruption is entitled to substantial weight. *Id.* The governmental entity need not "allow

events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick,* 461 U.S. at 152, 103 S.Ct. at 1693. Nothing in the record in this case suggests that the employer's concern about disruption within the police department was not reasonable.

The cases Tindle cites in support of his actual disruption argument are not on point. *United States v. National Treasury Employees Union,* — U.S. —, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995), involved the honoraria prohibition for federal employees in the Ethics Reform Act of 1989. In considering the potential for disruption, the Court distinguished the honoraria ban from disciplinary actions taken by employers. Both *Flanagan v. Munger,* 890 F.2d 1557 (10th Cir.1989), and *Berger v. Battaglia,* 779 F.2d 992 (4th Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986), refer to the defendant's "interest in avoiding direct disruption" of internal operations, but they do not say that actual disruption must be shown. *Flanagan,* 890 F.2d at 1566; *Berger,* 779 F.2d at 1000. Moreover, the primary concern addressed by the police departments in those cases was not internal disruption in the force, but repercussions in the community. While Chief Caudell expressed some concern about negative publicity resulting from Tindle's behavior, he perceived the main problem to be the potential for disruption within the police force.

Neither *Dunn v. Carroll,* 40 F.3d 287 (8th Cir.1994), nor *Schiller v. Moore,* 30 F.3d 1281 (10th Cir.1994), stands for the proposition that evidence of actual disruption is necessary. In *Dunn* the plaintiff made a showing of expression related to a public concern and raised a material issue of fact related to the balancing of his expressive interests and the department's asserted interests in disciplining him. In *Schiller* a school principal, concerned about the superintendent's reorganization plan, made public statements about his status and possibly about the plan itself. Factual disputes existed as to whether the principal's speech was on a matter of public concern and as to the *Pickering* balancing test. In this case Tindle has not shown

either public concern expression or a disputed issue of material fact relevant to the balancing of interests.

Tindle does not dispute that his actions had the potential to disrupt working relationships at the LRPD, and the evidence in the record indicates that the potential for disruption was real. This evidence includes reactions from African–American officers, previous racial tensions within the force, and Tindle's own testimony to the Civil Service Commission agreeing that his conduct had caused "quite a bit of controversy at the Police Department." Moreover, he has not shown that he had a particular message to convey related to any public concern. He has not made the requisite showing to avoid summary judgment in defendants' favor.

### III.

■ Tindle also claims that the LRPD rules under which he was disciplined are unconstitutionally overbroad and vague. He was disciplined for violating Rule 1/4003 and Rule 1/4006:

1/4003.00. No officer shall engage in any personal act or conduct which, if brought to the attention of the public, could result in justified criticism of the officer or the department. No officer shall be involved personally in any disturbance or police incident to his discredit.

1/4006.00. No officer shall at any time ridicule, mock, deride, taunt, or belittle any person. Neither shall he/she willfully embarrass, humiliate, nor shame any person or do anything that might incite a person to violence.

Because police departments function as paramilitary organizations, their members may be subject to stringent rules and regulations that could not apply to other government agencies. *See Vorbeck v. Schnicker,* 660 F.2d 1260, 1263 (8th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982). "Regulations limiting even those rights guaranteed by the explicit language of the Bill of Rights are reviewed more deferentially when applied to certain public employees than when applied to ordinary citizens." *Crain v. Board of Police*

*Commissioners,* 920 F.2d 1402, 1408 (8th Cir. 1990).

The regulations at issue in this case are rationally related to the department's legitimate interest in developing "discipline, esprit de corps, and uniformity" within its ranks. *See Hughes v. Whitmer,* 714 F.2d 1407, 1419 (8th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). While it is true that the rules do not precisely define what would constitute impermissible conduct, they give adequate notice that high standards of conduct are required. Tindle's conduct fell squarely within the parameters of the rules. He suggests several hypothetical applications of the rules that may be impermissible, but the ability to conceive of hypothetical problematic applications does not render the rules susceptible to an overbreadth challenge. *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984).

Accordingly, the judgment of the district court is affirmed.