72 F.3d 568
 John D. TYLER, Appellant,
v.
The CITY OF MOUNTAIN HOME, ARKANSAS; Paul Doak,
individually and in his official capacity as Chief
of the Mountain Home Police Department, Appellees.
 No. 95-1146.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1995.
Filed Dec. 26, 1995.
 
 James G. Lingle, argued, Rogers, AR, for appellant.
 Jeanette Denham, argued, North Little Rock, AR (Roger Morgan, Mountain Home, AR, on the brief), for appellee.
 Before BOWMAN, ROSS, and JOHN R. GIBSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 John D. Tyler brought this 42 U.S.C. Sec. 1983 action, claiming that the City of Mountain Home, Arkansas, and Paul Doak, Chief of the Mountain Home Police Department (appellees), wrongfully demoted him from his position as sergeant in the Mountain Home Police Department in retaliation for exercising his First Amendment right to speak on matters of public concern. The district court[1] granted summary judgment in favor of appellees, concluding that the City's interest in maintaining discipline, morale, and a proper chain of command outweighed Tyler's interest in the speech at issue. We affirm.
 
 I.
 
 2
 On August 23, 1992, Tyler, then a sergeant in the Mountain Home Police Department, wrote a letter on City of Mountain Home letterhead to Sgt. John R. Booker of the Baxter County Sheriff's Department, complaining that certain deputies in the Sheriff's Department violated a standing policy held by both the Police and the Sheriff's Departments which mandated that suspects with blood alcohol levels in excess of the legal limit were to be arrested. In Tyler's view, failure to detain the suspects not only violated established policy, but also the testing of suspects cost the city money, and the release of intoxicated drivers posed a threat to the public safety. In his letter, Tyler instructed that Sgt. Booker "advise all deputies under your command that this should not ever happen again. Not only does it cost the city for breath test tickets, mouthpieces, and other related items but it also [sic] a complete waste of the MHPD officer's time." Tyler sent the letter notwithstanding that Chief Doak had previously instructed that any letters sent on official stationery had to be cleared with Chief Doak first.
 
 
 3
 Following receipt of the letter, Sgt. Booker wrote to Chief Doak stating that Tyler's letter was "argumentative" and that failure to follow the chain of command in such matters could damage the good relationship between the Police and Sheriff's Departments. Sheriff Joe H. Edmonds also wrote a letter to Chief Doak in which he stated that "a letter of this magnitude from Sgt. Tyler could damage our good relationship." On September 29, 1992, Chief Doak demoted Tyler from sergeant to patrolman as a result of his failure to follow the chain of command in sending the complaint to Sgt. Booker. Tyler now alleges that his letter to Sgt. Booker was protected by the First Amendment and that the appellees violated his civil rights by demoting him.
 
 II.
 
 4
 It is clearly established that "a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). However, the employee's freedom of speech is not unlimited. Rather, it is recognized that "the state, as an employer, has a legitimate interest in regulating the speech of its employees." Hamer v. Brown, 831 F.2d 1398, 1401 (8th Cir.1987); Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).
 
 
 5
 Courts addressing claims by public employees who allege retaliatory employment practices in violation of an employee's right to free speech must employ a two-step analysis. Kincade v. City of Blue Springs, 64 F.3d 389, 395 (8th Cir.1995). First, the court must determine whether the speech at issue can be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Second, the court must consider whether the interest of the employee, as a citizen, in commenting on matters of public concern outweighs the interest of the state, as an employer, in promoting the efficiency of the public services it performs. Pickering, 391 U.S. at 568, 88 S.Ct. at 1734-35. Both of these questions are issues of law for the court to decide. Shands v. City of Kennett, 993 F.2d 1337, 1342 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994).
 
 
 6
 It is undisputed in the present case that Tyler's letter is properly characterized as protected speech and that the demotion was a result of that letter. Accordingly, the only issue remaining for our review is a balancing of Tyler's right to free speech against the interests of the Mountain Home Police Department in fulfilling its responsibilities to the public. Factors relevant in weighing the competing interests of the employer and employee are whether the speech creates disharmony in the work place, interferes with the speaker's ability to perform his duties, or impairs working relationships with other employees. Id. at 1344; Kincade, 64 F.3d at 397.
 
 
 7
 It has been recognized that a police department has a more significant interest than the typical government employer in regulating the speech activities of its employees in order "to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence." Shands, 993 F.2d at 1344 (citations omitted). "Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." Tindle v. Caudell, 56 F.3d 966, 971 (8th Cir.1995). The public safety employer's determinations of both the potential for disruption as a result of the speech, as well as the employer's response to the actual or perceived disruption, are entitled to "considerable judicial deference." Shands, 993 F.2d at 1345.
 
 
 8
 Here, the district court found that an amicable working relationship between the two law enforcement agencies was important, especially given the size of the close community. The two departments depended on each other for various functions, such as the provision of breathalizer examinations. Sheriff Edmonds and Sgt. Booker both informed Chief Doak that a letter of this nature sent outside the chain of command could damage the good relationship between the two departments. Further, Tyler's failure to follow the chain of command called into question his working relationship with his superior officers and at least potentially impaired the police chief's ability to control the actions of his subordinates and maintain the discipline required by the department to insure public safety.
 
 
 9
 A showing of actual prejudice is not always required in the balancing process under Pickering. Tindle, 56 F.3d at 972; Shands, 993 F.2d at 1344. A public safety employer "need not allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." Tindle, 56 F.3d at 972 (quoting Connick v. Myers, 461 U.S. at 152, 103 S.Ct. at 1692). Nothing in the record suggests that appellees' concern about maintaining chain of command and a close working relationship with the Sheriff's Department was unreasonable.
 
 III.
 
 10
 Based on the foregoing, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable H. Franklin Waters, Chief United States District Judge for the Western District of Arkansas