100 F.Supp.2d 984 (2000)
Robert WIELAND, Plaintiff,
v.
CITY OF ARNOLD, Defendant.
No. 4:98CV1600-SNL.
United States District Court, E.D. Missouri, Eastern Division.
June 15, 2000.
*985 *986 Rick Andrew Barry, The Law Offices of Rick Barry, P.C., Clayton, MO, for Robert Wieland, plaintiff.
Brian A. Spector, Spector and Wolfe, LLC, Kirkwood, MO, Robert K. Sweeney, St. Louis, MO, for Arnold, City of MO, a municipal corporation, defendant.

MEMORANDUM AND ORDER
LIMBAUGH, Senior District Judge.
This matter is before the Court on briefs by the parties. The parties agree that there are no facts in dispute here, and each side seeks a declaratory judgment from the Court vindicating its position. The Court will make a legal ruling at this time which shall dispose of this case.

Undisputed Facts
Plaintiff Robert Wieland (Wieland) is a commissioned veteran police officer of long service with the police department of the *987 defendant City of Arnold, Missouri (Arnold or City of Arnold). Wieland has an ongoing, off-duty, personal relationship with Cynthia M. Yochum, an Arnold resident. Ms. Yochum is currently on probation for the felony offense of receiving stolen property.
On July 28, 1999, Captain Donald Koehler, acting Chief of the Arnold Police Department, issued a written order to Wieland ordering him to immediately terminate his relationship with Ms. Yochum. Captain Koehler issued this order under the authority of the City of Arnold, and pursuant to Arnold Police Department General Order 14.3.12, which forbids as unbecoming conduct:
Knowingly associating, on or off duty, with convicted criminals or lawbreakers under circumstances which could bring discredit upon the Department or impair an Officer in the performance of his duty.
Captain Koehler's order referred to an incident upon which Wieland, while off-duty, attended a City of Arnold ribboncutting ceremony. Ms. Yochum accompanied Wieland to the event, and the two appeared together in a photograph published by a local paper. Captain Koehler, acting on behalf of the City of Arnold, believed that this public appearance embarrassed the City. His order threatened that if Wieland failed to terminate his relationship with Ms. Yochum, he would be demoted from the office of Lieutenant or terminated from the Department.[1]

Discussion
Wieland presses his claim that General Order 14.3.12 violates his Constitutional rights on two separate but coextensive theories.[2] First, he claims that General Order 14.3.12 violates his right of free intimate association. Second, he claims that General Order 14.3 .12 violates his right to privacy. In the alternative, Wieland argues that General Order 14.3.12 is unconstitutionally vague or overbroad.
The United States Supreme Court recognized a right to intimate association in Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). In Roberts, the Supreme Court declared that the First Amendment protects "certain kinds of highly personal relationships ... from unjustified interference by the State." 468 U.S. at 618, 104 S.Ct. 3244, 82 L.Ed.2d 462. Protected associations "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain affiliation, and seclusion from others in critical aspects of the relationship." Id. at 620, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462. The Supreme Court recognized that there exists a continuum of human relationships potentially protected by the freedom of intimate association. Extremely close relationships, such as family relationships and marriage, are generally afforded greater protection from government interference than are merely social ones. See, e.g., Bush v. Dassel-Cokato Bd. of Educ., 745 F.Supp. 562, 569 (D.Minn.1990) (student's desire to associate *988 with her peers at a party not entitled to constitutional protection).
The Supreme Court has also discussed general "zones of privacy" which emanate from the first, third, fourth, fifth and ninth amendments, and in particular "the First Amendment has a penumbra where privacy is protected from governmental intrusion." Griswold v. Connecticut, 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The right of privacy extends to cases involving personal decisions about marriage, procreation, contraception, family relationships, child rearing and education, and abortion. See Carey v. Population Servs. Int'l, 431 U.S. 678, 684-85, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). In limited circumstances, the right of privacy has been extended to certain matters implicating individual autonomy, whether or not the individual in question was married. See, e.g., Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). However, the Supreme Court has refused to extend the right of privacy to all private sexual conduct. See Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).
The lesson this Court takes from the existing case law involving the rights to intimate association and privacy is that those rights are limited both in scope and application. The Court is uncomfortable announcing a new, general rule that all dating relationships are Constitutionally protected, especially when that rule is advocated by a government employee who works in the sensitive area of law enforcement. While the Court feels certain that any sanctioned marital relationship entered by Wieland and Ms. Yochum would be protected, the Court doubts that the amorphous social relationship at issue, although apparently intimate to some degree, is entitled to the full scope of Constitutional protection. That is not to say, however, that its place on the above mentioned continuum of human relationships does not entitle it to some degree of protection from governmental interference.
In traditional First Amendment speech cases involving governmental employers, when courts have found protectable Constitutional speech in issue they have conducted the Pickering balancing test, which "involves balancing the employee's right to free speech against the interest of the public employer." Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Sexton v. Martin, 210 F.3d 905, 910 (8th Cir.2000). While this case does not involve a traditional free speech question, the Court believes it is appropriate to apply a modified Pickering test, because a similar rationale drives the City of Arnold's actions here. That is, the government employer claims a special interest in regulating its employees' behavior in order to avoid the disruption of public functions. See Brown v. Polk County, 61 F.3d 650 (8th Cir.1995) (en banc) (approving application of modified Pickering analysis to First Amendment free exercise claim); Day v. Board of Regents of the Univ. Of Neb., 911 F.Supp. 1228, 1240 (D.Neb.1995) (applying modified Pickering analysis to claim of violation of associational rights). See also McCabe v. Sharrett, 12 F.3d 1558 (11th Cir.1994) (finding a protectable associational right in a police secretary's decision to marry a line officer within the department, but no violation of that right by the chiefs decision to transfer her). As in Day, the analysis here applies outside the speech context in a case involving associational rights.
In conducting the Pickering balance, the Court has on the one hand Wieland's associational interest in continuing his dating relationship with Ms. Yochum. As discussed above, the Court finds that interest entitled to less protection than a more intimate relationship, such as marriage, would be. On the other hand is the City of Arnold's interest in maintaining strict order and efficiency among its police department. A police department "has a more significant interest than the typical *989 government employer in regulating the [First Amendment] activities of its employees in order `to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence.'" Tyler v. City of Mountain Home, 72 F.3d 568, 570 (8th Cir.1995) quoting Shands v. City of Kennett, 993 F.2d 1337, 1344 (8th Cir.1993). "Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." Tindle v. Caudell, 56 F.3d 966, 971 (8th Cir. 1995). The City of Arnold's "determinations of both the potential for disruption as a result of the [forbidden activity], as well as the employer's response to the actual or perceived disruption are entitled to considerable judicial deference." Tyler, 72 F.3d at 570 (internal quotation omitted).
In this case, Wieland argues that the enforcement of General Order 14.3.12 against him and his relationship with Ms. Yochum violates his rights to intimate association and privacy because that relationship does not interfere with his performance as a City of Arnold Police Officer or the Department's efficiency.[3] However, as the Eighth Circuit pointed out in Tyler, Tindle and Shands, a showing of actual prejudice is not always required in the balancing process under Pickering. Tyler, 72 F.3d at 570; Tindle, 56 F.3d at 972; Shands, 993 F.2d at 1344. Simply because Wieland's relationship has not affected his own performance on the job does not make it unreasonable to assume a very real likelihood that it could affect the chain of command as well as the public image of the department. When Wieland appears at public functions in the company of a known felon, that potentially undermines his authority as a law enforcement officer. Furthermore, when junior officers observe Wieland appearing publicly with Ms. Yochum in direct contravention of General Order 14.3.12, it further potentially undermines his ability to serve in his command position. Therefore, the Court will uphold the City of Arnold's discretion in exercising its authority to regulate its police department under General Order 14.3.12.
The Court similarly rejects Wieland's arguments that General Order 14.3.12 is void for vagueness or constitutionally overbroad. "Because police departments function as paramilitary organizations, their members may be subject to more stringent rules and regulations that could not apply to other government agencies." Tindle, 56 F.3d at 973. "Regulations limiting even those rights guaranteed by the explicit language of the Bill of Rights are reviewed more deferentially when applied to certain public employees than when applied to ordinary citizens." Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1408 (8th Cir.1990). As in Tindle, the regulations at issue in this case are rationally related to the department's legitimate interest in developing discipline among the ranks and respect within the community. See Tindle, 56 F.3d at 973. General Order 14.3.12 gives officers notice that high standards of conduct are required, and that they are not to engage in relationships with lawbreakers which could undermine the public's view of the department. Here, Wieland has knowingly and publicly associated with a person known to him (and apparently to the larger community) to be on probation for a felony offense. The application of this regulation to him does not violate his rights.

Conclusion
Wieland has invoked certain Constitutional rights in this case, even though those rights are not explicitly mentioned within the text of the Constitution. However, his rights to intimate association and *990 privacy exist along a continuum. The rights of people to be free from government intrusion into their associations are much stronger when dealing with extremely close relationships such as family or marriage. Looser social ties, such as dating, may be protected, but less stringently so. Furthermore, Wieland's interest in dating Ms. Yochum, an undisputed felon probationer, must be balanced against the City of Arnold's interest in maintaining order among its police force. While the City of Arnold certainly could not enforce a regulation such as General Order 14.3.12 against the general public, and probably could not enforce it against other civic employees, it may regulate the behavior of its police officers more carefully. The Court will defer to its discretion to do so.
IT IS HEREBY ORDERED, ADJUDGED and DECREED that declaratory judgment is entered for the defendant, City of Arnold.
IT IS FURTHER ORDERED that each side shall bear its own costs and fees.
NOTES
[1] Wieland had apparently previously been disciplined for his relationship with Ms. Yochum. The prior disciplinary action resulted in Wieland's loss of one week's compensatory time.
[2] No person may subject any citizen to the deprivation of Constitutional rights under color of state law. See 42 U.S.C. § 1983. For purposes of suits of this type, a municipality may be considered a person in the event that it has an explicit policy, such as Arnold Police Department General Order 14.3.12, which allegedly deprives a plaintiff of his or her Constitutional rights. See Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In a case such as this one, where the plaintiff claims an actual or imminently threatened injury which is redressable by some other statute, the Court may issue a ruling and remedy pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. The Court makes these observations on its own, as the parties progressed directly to the substantive First Amendment issues in briefing their positions.
[3] In support of this argument, Wieland cites a commendation he recently received from Captain Greg Happel.