Bea, Circuit Judge,
Dissenting,
I agree that an expression of support for the “Vagos,” an organization classified by the Federal Bureau of Investigation (“FBI”) as an “outlaw motorcycle gang,” “touches on” a matter of public concern, Connick v. Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 76 L.Ed.2d 708 (1983). I disagree with the majority’s requirement that actual evidence of disruption is essential before a law enforcement agency can fire an employee for his affiliation with, or expression in support of, the “Vagos.” Such affiliation or expression is contrary to his governmental employer’s mission, as reflected in its important law enforcement interests. I would And that the government employer has a strong safety interest in maintaining public respect for its law enforcement agencies and officials, and that this interest is necessarily undermined when a law enforcement employee engages in conduct or speech antithetical to his employer’s legitimate law enforcement mission. Under these circumstances, the employer is justified in terminating the aberrant employee as a matter of law. For this and the reasons set forth below, I would uphold the district court’s grant of summary judgment in defendants’ favor.
We have previously recognized (in the Fourth Amendment context) that law enforcement agencies’ unique character as “paramilitary” organizations justifies greater curtailment of their employees’ constitutional rights, given the employer’s—as well as the public’s—strong interest in the provision of safe and effective law enforcement services. Aguilera v. Baca, 510 F.3d 1161, 1168 (9th Cir. 2007) (“While ‘policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights,’_ society has an equally important interest in ensuring the highest integrity by those entrusted with discharging the duties of a peace officer.” (quoting Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967))).
This principle applies with equal force in the First Amendment context. See Locurto v. Giuliani, 447 F.3d 159, 179 (2d Cir. 2006) (Calabresi, J.) (“Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer.” (quoting Tindle v. Caudell, 56 F.3d 966, 971 (8th Cir. 1995))); Jurgensen v. Fairfax Cty., 745 F.2d 868, 880 (4th Cir. 1984) (In applying Pickering, “courts' must give weight to the nature of the employee’s job in assessing the possible effect of his action on employee morale, discipline or efficiency.... [with] university professors [falling] at one end [of the spectrum] to policemen at the other. State inhibition of academic freedom is strongly disfavored. In polar contrast is the discipline demanded of, and freedom correspondingly denied to policemen.” (citing Wieman v. Updegraff, 344 U.S. 183, 195, 73 S.Ct. 215, 97 L.Ed. 216 (1952) (Frankfurter, J., concurring))).
Indeed, we recognized as much in Dible v. City of Chandler, 515 F.3d 918 (9th Cir. 2008), where we affirmed a grant of summary judgment in .favor of the Chandler, Arizona Police Department and other government defendants on claims that the termination of a police officer for operating a for-profit pornography website violated the officer’s freedom of speech, id. at 922, 924, 931. In concluding that the government reasonably predicted that the plaintiff-em *878 ployee’s operation of a pornography website would disrupt the provision of law enforcement services, we reasoned:
Police departments, and those who work for them, are engaged in a dangerous calling and have significant powers. The public expects officers to behave with a high level of propriety, and, unsurprisingly, is outraged when they do not do so. The law and their own safety demands that they be given a degree of respect, and the sleazy activities of Ronald and Megan Dible could not help but undermine that respect. Nor is this mere speculation.
Id. at 928 (emphasis added).
Nor are we alone in our' recognition that law enforcement agencies require public respect to perform their jobs safely and effectively. In Locurto v. Giuliani, 447 F.3d 159 (2d Cir. 2006) (Calabresi, J.), a police officer and two firefighters sued various New York state defendants, alleging that they were unlawfully terminated in retaliation for their participation in a Labor Day parade float that “featured mocking stereotypes of African-Americans” in violation of the First Amendment. Id. at 163. The day following the incident, New York Mayor Rudolph Giuliani was quoted as stating, “I’m not going to take the responsibility of keeping [Lo-curto] on the police force and then three years from now he hurts somebody and somebody wants to know why he wasn’t removed.” Id. at 165 (quoting Kit. R. Roane, Suspended Police Officer Apologizes, Calling Float “a Big Mistake,” N.Y. Times 51 (Sept. 13, 1998)). The Second Circuit “conclude[d] that the defendants fired the plaintiffs out of a reasonable concern for disruption, and that this concern outweighed the plaintiffs’ individual expressive interests.” Id. In so holding, the Second Circuit reasoned that defendants “legitimately regarded] as ‘disruptive’ expressive activities that instantiate or perpetuate a widespread public perception of police officers and firefighters as racist.” Id. at 178. This was so, the court explained, because:
Police officers and firefighters alike are quintessentially public servants. As such, part of their job is to safeguard the public’s opinion of them, particularly with regard to a community’s view of the respect that police officers and firefighters accord the members of that community. ,.. Where a Government employee’s job quintessentially involves public contact, the Government may take into account the public’s perception of that employee’s expressive acts in determining whether those acts are disruptive to the Government’s operations.
Id. at 178-79. Accordingly, the Second Circuit reversed the district court’s grant of summary judgment in favor of the plaintiffs and remanded with instructions to enter judgment for the defendants instead. Id. at 163.
Just as public respect for law enforcement is inherently undermined when a police officer engages in “sleazy” activities like pornography, or racist expression which alienates communities the officer may be called upon to protect, so too is public respect fundamentally undercut when a spiritual leader for crime-prone youth offenders proudly and publicly associates with an organization classification by the FBI as a criminal organization.
Here, the following is undisputed: Plaintiff Ronald Godwin (“Godwin”) was terminated because he associated with Vagos motorcycle club members and was seen around town wearing Vagos “colors” and paraphernalia. The Oregon Youth Authority’s (“OYA”) mission “is to protect the public and reduce crime by holding youth offenders accountable and providing opportunities for reformation in safe environ *879 ments.” Regardless whether Godwin’s association with Vagos actually interfered with OYA’s mission, OYA senior'management reasonably predicted that the conflict between his employer’s mission and Godwin’s activities would undermine public respect for OYA, and thereby impair OYA’s ability effectively to rehabilitate youth offenders. Dible and Locurto hold that this is enough to justify a grant of judgment in the government’s favor.
The late Justice Scalia put it well: “[N]o law enforcement agency is required by the First Amendment to permit one of its employees to ‘ride with the cops and cheer for the robbers.’ ” Rankin v. McPherson, 483 U.S. 378, 394, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (Scalia, J., dissenting).
To the extent the majority suggests to the contrary, I respectfully dissent.