Major General Melvin C. Thrash Office of the Adjutant General Military Department of Arkansas Camp Robinson North Little Rock, Arkansas 72118-2200
Dear Major General Thrash:
This letter is a response to your request for an opinion regarding the uniformed employees who serve on the staff of the Civilian Student Training Program at Camp Robinson. You state that the staff members of the Program are provided with uniforms for their daily work, and that this uniform is a symbol of authority. You indicate a concern that some deviation from the standard uniform will lead to substantial deviation. The particular deviation about which you are concerned is the wearing of jewelry, such as earrings and nose rings. You have presented the following two specific questions:
 (1) Does the law for uniformed employees support a prohibition on ear and nose jewelry for males, females, or both?
 (2) Can the Military Department withstand a state grievance and first amendment suit, based upon a prohibition against the wearing of jewelry?
In response to your first question, there are no Arkansas state statutes that govern uniformed employees per se. Neither are there any statutes that specifically address the questions that you have presented. The Military Code of Arkansas (A.C.A. § 12-60-101 et seq.), however, does contain provisions that provide authority for you to promulgate rules and regulations, such as a dress code. First, A.C.A. § 12-61-106, which sets forth generally the powers and duties of the Adjutant General, states:
 For the purpose of effectively carrying out the terms of this code, the Adjutant General shall have the power to prescribe such rules and regulations as he may from time to time deem necessary.
A.C.A. § 12-61-106(o).
Second, A.C.A. § 12-61-124, which addresses civilian juvenile student training programs specifically, states:
 The Adjutant General may promulgate and issue such rules, regulations, and other guidelines as may be necessary and proper to carry out the purposes and provisions of this section.
A.C.A. § 12-61-124(c).
The question with regard to these statutory provisions is, of course, your second question, i.e., whether regulations promulgated under the authority of those sections would withstand a legal challenge. Unless the Military Department has a grievance policy that would provide other causes of action,[1] the complaint that would most likely arise out of a policy prohibiting the wearing of jewelry is the one that you mentioned: a first amendment challenge.[2]
It is my opinion that the question of whether a policy prohibiting the wearing of jewelry would withstand a first amendment challenge will depend on certain factual determinations, as explained in further detail below.
In order for a public employee to challenge a dress code policy (or any other policy) successfully on a first amendment basis, the challenger must first establish that the policy interferes with protectable speech. Non-verbal conduct (such as a particular manner of dress) can constitute protectable "speech" within the meaning of the first amendment if it is intended to convey a "particularized message" and if there is a likelihood that the message would be understood by those who viewed it.Texas v. Johnson, 491 U.S. 397 (1989). The first question of fact to be determined, then, is whether the wearing of jewelry could be construed to constitute the sending of a message, and whether that message would likely be understood by those viewing it. Although this is a fact question that will turn on the nature of the claimed message, it is helpful to note as a point of reference that the wearing of earrings has been held in some instances not to constitute protectable speech. See,e.g., Rathert v. Village of Peotone, 903 F.2d 510 (7th Cir. 1990); Olesenv. Bd. of Educ. of Sch. Dist. No. 228, 676 F. Supp. 820 (N.D. Ill. 1987). See also Star v. Gramley, 815 F. Supp. 276 (C.D. Ill. 1987) (wearing of women's apparel by male in prison not protectable speech).
The message conveyed must also be one pertaining to a matter of public concern. Waters v. Churchill, 114 S.Ct. 1878 (1994); Connick v. Myers,461 U.S. 138 (1983). A matter of "public concern" is one which relates to a political, social, or other concern to the community. Rahn v. DrakeCenter, 31 F.3d 407 (1994); Morgan v. Ford, 6 F.3d 750 (1993). Although this is an issue of law for a court to decide, Shands v. City ofKennett, 993 F.2d 1337 (8th Cir. 1993), cert. denied, 127 L.Ed.2d 75
(1994), the decision on the issue will, again, turn on the factual question of what the claimed message is. Again as a point of reference, the courts in Rathert and Olesen, supra, found no message of public concern in the wearing of earrings.
Because we have found no published case in which the wearing of jewelry was held to be protectable speech, it might be concluded that it is unlikely that the wearing of jewelry by the staff members of the Civilian Student Training Program would be considered protectable speech. Again, however, this is a question that will turn on the nature of the claimed message if a challenge should occur.
In the event that the wearing of jewelry were considered to be protectable speech, the next step in the analysis of whether the policy prohibiting jewelry would survive a first amendment challenge would be a balancing of interests. Pickering v. Bd. of Educ., 391 U.S. 563 (1968). The policy would survive the challenge if it were found that the military department's interest in prohibiting the wearing of jewelry outweighed the staff's interest in wearing it. The Eighth Circuit Court of Appeals has enumerated the factors that are relevant to such a balancing exercise:
(1) The need for harmony in the workplace;
 (2) Whether the job requires a close working relationship between the speaker and co-workers who might be offended by the speech;
(3) The time, place, and manner of the employee's expression;
(4) The context of the dispute;
(5) The degree of public interest in the speech;
 (6) Whether the speech interfered in the employee's ability to do his job.
Dunn v. Carroll, 40 F.3d 287, 292 (8th Cir. 1994). Although these factors are all factual questions which cannot be answered in the absence of actual facts, it might be noted that it is well-established that governmental entities have a legitimate interest in regulations that promote their efficiency. Waters v. Churchill, supra; Casey v. City ofCabool, 12 F.3d 799 (8th Cir. 1993). Indeed, it has been specifically held that the government's interest in having policies prohibiting certain kinds of dress (for example, union paraphernalia) outweighed a "speaker's" interest in wearing the type of dress in question (even though the court had found that the wearing of that particular type of dress was protectable speech in those instances). See, e.g., Immigrationand Naturalization Service v. Federal Labor Relations Authority,955 F.2d 998 (5th Cir. 1992); United States v. Federal Labor RelationsAuthority, 855 F.2d 1454 (9th Cir. 1988). In so holding, the court inINS, supra, stated: "The INS anti-adornment regulation furthers its interest in the efficient functioning of the department because it makes the inspectors more readily recognizable to the public, encouragesesprit de corps, and subordinates personal preferences in favor of the overall group mission." 855 F.2d at 1466. The court in U.S. v. FLRA noted that these interests are heightened in a paramilitary situation.955 F.2d at 1006.
Finally, it is important to note that the manner in which the policy is applied must serve the stated purpose of the policy and leave open other avenues of expression. Association of Community Organizations for ReformNow v. St. Louis County, 930 F.2d 591 (8th Cir. 1991). For example, if the stated purpose of the policy is to make the staff members more readily recognizable to outsiders and to subordinate personal preferences in favor of the overall group mission, but the policy is applied only to men, and not to women, it might well be argued that the policy does not, in fact, serve the stated purpose. Or, if the policy applies even when the staff members are off-duty and not in uniform, it could well be argued that the policy is overbroad and does not leave open other avenues of expression.[3] Therefore, a policy which applies across the board to all staff members, and which recognizes the staff members' right to wear jewelry when not in uniform would be more likely to survive a legal challenge.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SA/cyh
[1] This office does not maintain copies of and is not familiar with the individual grievance policies of the various departments of state government. We are therefore not in a position to state whether your department's particular grievance policy would provide a cause of action arising out of a policy prohibiting the wearing of jewelry.
[2] U.S. Const., amend. I. The complainant might also rely upon the freedom of speech section of the Arkansas Constitution. (Ark. Const., art. 2, § 6).
[3] But see Rathert, supra, where the court upheld against afirst amendment challenge a policy prohibiting the wearing of earrings by police officers even when off duty. That case is likely distinguishable on the facts relevant to the off duty portion of the policy.