# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2422EA

_____

Charles Buazard,　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant,　　　　　　　 *
　　　　　　　　　　　　　　　　　　　　*　On Appeal from the
　　　　v.　　　　　　　　　　　　　　 *　United States District Court
　　　　　　　　　　　　　　　　　　　　*　for the Eastern District
　　　　　　　　　　　　　　　　　　　　*　of Arkansas.
Charles Meridith; John Patrick; City of　*
Pocahontas, Arkansas,　　　　　　　　 *
　　　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellees.　　　　　　　 *

_____

Submitted:  December 11, 1998

Filed: March 30, 1999

_____

Before RICHARD S. ARNOLD, HEANEY, and MORRIS SHEPPARD ARNOLD,
　　　　Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

　　　Charles Buazard brought this case against defendants Charles Meridith, John
Patrick, and the City of Pocahontas, Arkansas, alleging a violation of his First
Amendment right to free speech.  The District Court[1] granted summary judgment in

---

[1]The Hon. George Howard Jr., United States District Judge for the Eastern and
Western Districts of Arkansas.

favor of the defendants, and Buazard now appeals.  We agree with the District Court's summary-judgment decision and therefore affirm.

In 1984 the city of Pocahontas hired Buazard as a patrol officer.  Buazard received a promotion to Assistant Chief of Police in 1989.  On August 10, 1994, two officers of the Pocahontas Police Department were fired for misconduct.  Although Buazard was not present at the incident which led to the firings,[2] Buazard discussed the incident with both of the officers, as well as with witnesses, and was present when the officers were fired.  Upon request from the Chief of Police, Charles Meridith, Buazard prepared two statements about his conversations with the witnesses and the fired officers.  The statements also discussed the actual firing of the two officers, for which Buazard was present.  Within a month of the firings, Meridith approached Buazard to tell him that some of the information in his statements was false and would need to be changed.  Buazard stood by his statements as truthful and refused to make any changes.  Meridith and Buazard never discussed the matter again.

Buazard alleges that Meridith and John Patrick, the mayor of Pocahontas, retaliated against him for refusing to change his statements.  He was demoted  from Assistant Chief to patrolman and felt ostracized by both Meridith and Patrick.  Meridith and Patrick maintain that Buazard was demoted because of poor job performance.  Buazard also believes he was not given the same training opportunities as the other Pocahontas police officers and was given menial work.

After his demotion and the other alleged adverse action, Buazard brought this 42 U.S.C. § 1983 action, alleging a violation of his First Amendment right to free speech.  Buazard argues that the actions of Meridith and Patrick were taken in retaliation for Buazard's exercising his right to free speech in refusing to change his statements.  The District Court determined that the speech in question was not a matter of public

---

[2]The officers were fired for mistreating a prisoner.

concern, and was therefore not protected by the First Amendment. Because we agree with this determination, we affirm the District Court's grant of summary judgment in favor of the defendants.

We review the District Court's grant of summary judgment de novo. See Lynn v. Deaconess Med. Ctr.-West Campus, 160 F.3d 484, 486 (8th Cir. 1998). Summary judgment is proper where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A public employee such as Buazard alleging a violation of the right to free speech must show that the speech in question is entitled to the protections of the First Amendment. The speech must address a matter of public concern. Bausworth v. Hazelwood School Dist., 986 F.2d 1197, 1198 (8th Cir. 1993). Additionally, if the speech does address a matter of public concern, the court must balance the employee's right to free speech with the interests of the public employer "in promoting efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). See also Kincade v. City of Blue Springs, Missouri, 64 F.3d 389, 395 (8th Cir. 1995). Because the speech in this case – Buazard's statements and his refusal to change them – does not address a matter of public concern, we do not reach, and need not address, the second step of the Pickering balancing test.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context" of the speech, and that speech must relate to some "matter of political, social or other concern to the community." Connick v. Myers, 461 U.S. 138, 146-47 (1983). Our earlier cases in this area suggest that Buazard's speech is not constitutionally protected. See Day v. Johnson, 119 F.3d 650

(8th Cir. 1997); <u>Bausworth v. Hazelwood School Dist.</u>, 986 F.2d 1197 (8th Cir. 1993). When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern. See <u>Day</u>, 119 F.3d at 657; <u>Bausworth</u>, 986 F.2d at 1198-99. Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment. <u>Id.</u> Both of the statements Buazard wrote concerning the firing of the two police officers were done at the request of the Chief of Police. Although the incident which led to the firings may itself be a matter of public concern, there is no indication that Buazard, in making, or refusing to change, his statements, was taking any action as a concerned citizen, rather than simply as an employee following orders or refusing to follow them. Buazard's refusal to change his statements and the ensuing allegedly retaliatory actions by his superiors, were actions taken by Buazard in his role as a police officer.

The context in which the speech occurs –in addition to the content and form of the speech – is also relevant. See <u>Connick</u>, 461 U.S. at 147. In Buazard's case, the statements were entirely internal to the Pocahontas police. A public employee does not necessarily give up his right to free speech, and the protection of the First Amendment, simply because his speech is private, and not expressed to the public. See <u>Givhan v. Western Consolidated School Dist.</u>, 439 U.S. 410, 414 (1979). The internal nature of Buazard's speech is, however, a factor to be considered. Taken together, the internal nature of the statements and Buazard's role as employee in making the statements lead us to conclude that the speech was not a matter of public concern. Because the speech was not a matter of public concern, the First Amendment affords no protection for the speech. There was, therefore, no violation of Buazard's First Amendment rights.

If, as plaintiff contends, his superior ordered him to lie and then demoted him for refusing, an injustice has been done. But it is not one actionable under 42 U.S.C. § 1983 on a free-speech theory, under our precedents defining speech on matters of public concern. We therefore affirm

It is so ordered.

HEANEY, Circuit Judge, dissenting.

Though the majority correctly states the law governing speech rights of public employees, I cannot join in the conclusion that the First Amendment does not protect public employees from being forced to choose between falsifying a report or being terminated. The line of decisions limiting First Amendment protections where speech is of a purely job-related nature should not be expanded to foreclose the claim of a public official who refused to be a party to municipal corruption.

Charles Buazard has alleged the following facts, which this court must read in the light most favorable to him. The chief of police instructed Buazard to file a report concerning an incident wherein a police officer, for the stated purpose of alleviating boredom, conspired with two prisoners to induce another police officer to mace a third prisoner. Both officers were fired, though the officer who administered the mace was unaware that she had been set up. Subsequently, Buazard expressed to the chief his disagreement with the chief's handling of the situation, stating that he would have investigated the matter further before taking any action against the apparently non-culpable officer. Some time after the firings, Buazard attended a lunch with the chief of police and the mayor. At the lunch, the mayor repeatedly expressed his view that the city could not afford a wrongful termination suit by the fired officers. Shortly thereafter, the chief of police approached Buazard and told him that some of the statements in his report were incorrect and would have to be changed. Buazard, connecting the chief's command with the mayor's earlier stated concerns, refused to alter his earlier truthful report in order to insulate the city from tort liability.

As the majority correctly notes, speech of public employees receives only limited First Amendment protections. See Connick v. Myers, 461 U.S 138, 143 (1983).

Nonetheless, public employers cannot suppress the rights of their employees to participate in or make comments upon matters of "political, social or other concern to the community." See id. at 146; see also Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). The majority recognizes this rule but asserts that it does not apply because speech that is "purely job-related" will not be deemed a matter of public concern and because "there is no indication that Buazard, in making, or refusing to change, his statements, was taking any action as a concerned citizen, rather than simply as an employee following orders or refusing to follow them." Supra at __ (citing Day, 119 F.3d at 657; Bausworth, 986 F.2d at 1198-99).

I disagree with this assessment. In my view the facts of this case are closer to those in Rankin v. McPherson, 483 U.S. 378, 381 (1987), in which the Court considered a situation wherein a deputy constable, a clerical employee in the constable's office, remarked after the assassination attempt on President Reagan that "If they go for him again, I hope they get him." In determining that the statement constituted protected speech regarding issues of public concern, the Court examined the larger context in which the statement occurred. See id. at 386-87 (citing Connick, 461 U.S. at 146-48). Because the statement was made in the context of a conversation concerning the President's public policies, the speech was protected. See id. at 385 n.10 (holding that a public employer may not divorce protected statement from context and use that statement standing alone as basis for discharge).

Similarly, it is difficult to see how Buazard's speech can be "purely job-related" given the larger context in which the speech occurred. There simply is no purely job-related reason that he would refuse to file a false report. On the contrary, opposition to a political cover-up is almost by definition public-minded, rather than job-related, speech. For this reason, I have difficulty understanding how refusal to become a party to political corruption can be construed as "purely job-related" speech. Additionally, Buazard states in his January 15, 1997 deposition that his refusal to change the report stemmed from his belief that altering a public record would expose him to criminal

liability. While this does not indicate that Buazard's speech was animated by public concern, it also does not dictate that the speech was "purely job-related." Buazard was hired to uphold and enforce the law. As such, filing a false report, or refusing to do so, could not be a purely job-related action.

The majority allows that police misconduct involving abuse of prisoners and a subsequent attempt by city officials to cover up the nature of the misconduct in order to avoid liability are issues in which the public may take an interest. The majority nonetheless characterizes Buazard's speech as purely job-related because he does not explicitly state that his actions reflected his concerns as a public citizen regarding the handling of the misconduct. I believe that the issue of whether Buazard's refusal to alter the report was animated by public mindedness constitutes a disputed question of fact, thus precluding summary judgment. At worst Buazard was motivated by self-interest and was attempting to avoid the criminal liability that he thought would accrue upon falsifying a police report.[3] At best, the record suggests that Buazard's refusal to alter the report was a function of his disagreement with the chief and the mayor's plan to insulate the city from liability. In either case, the record precludes resolution of this case at the summary judgment stage.

The district court found it significant that the chief of police in his conversation with Buazard did not specify which portions of the report he wanted changed. While Buazard seems incapable of articulating the connection in his deposition, it is apparent from the complaint that his basic contention is that the chief of police attempted to coerce him into participating in their plan to falsify information regarding police misconduct. Upon reading the report and drawing a reasonable inference in a light favorable to Buazard, as we are required to do, I am persuaded that Buazard has raised a genuine issue of material fact as to whether the police chief meant for him to alter the

---

[3]Even if it were clear that this belief were the sole basis for Buazard's refusal to alter the report, this would not be "job-related" so as to end the analysis.

report in accordance with the mayor's concerns. Buazard's refusal to follow orders was not purely job-related speech, but rather speech informed by considerations of what was right and just with regard to the city's role in investigating and firing the officers.[4]

Because the record supports the conclusion that the motivating factor in Buazard's refusal to follow orders was public mindedness regarding the behavior of city officials in attempting to insulate the city from liability for police misconduct, I would reach the second prong of the <u>Pickering</u> analysis. Since the interest of the public employer in "promoting the efficiency of the public services it performs through its employees," <u>see</u> <u>Pickering</u>, 391 U.S. at 568, cannot be said to outweigh the employee's right to free speech where the "services" in question are alleged falsification of records in order to insulate the municipality from liability, I would reverse the entry of summary judgment and remand for further proceedings.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Moreover, were Buazard's motivations "job-related," the stronger inference is that he would have had strong incentives to follow the mayor and police chief's wishes, both in order to preserve his job security and to maintain good working relations.