# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1130
No. 98-1334

_____

Phillip Padilla,                                        *
                                                        *
      Plaintiff - Appellee,                 *
                                                        *
    v.                                          *
                                                        *
South Harrison R-II School District,                    *
                                                        *
      Defendant-Appellant,                 *
                                                        *
Ed Musgrove, individually and in his                    *  Appeals from the United States
official capacity of the Superintendent                 *  District Court for the
of Schools of the South Harrison R-II                   *  Western District of Missouri.
School District; Larry Arney,                           *
individually and in his official capacity               *
as a member of the Board of Education                   *
of the South Harrison R-II School                       *
District; Charles McKinney,                             *
individually and in his official capacity               *
as a member of the Board of Education                   *
of the South Harrison R-II School                       *
District; LaVonne Barber, individually                  *
and in her official capacity as a member                *
of the Board of Education of the South                  *
Harrison R-II School District; Trent                    *
Bugbee, individually and in his official                *
capacity as a member of the Board of                    *
Education of the South Harrison R-II                    *
School District; Bill Lenhart,                          *

individually and in his official capacity   *
as a member of the Board of Education   *
of the South Harrison R-II  School   *
District; Bob Butler, only in his official   *
capacity as a member of the Board of   *
Education of the South Harrison R-II   *
School Board; Rick Kampman, only in   *
his official capacity as a member of the   *
Board of Education of the South   *
Harrison R-II School District; Leazenby, *
only in his official capacity as a member *
of the Board of Education of the South   *
Harrison R-II School District; Lois   *
CARLISLE, individually and in her   *
capacity with the Division of Family   *
Services of the Missouri Department of   *
Social Services; Beth Steinhauser,   *
individually and in her capacity with the *
Division of Family Services of the   *
Missouri Department of Social Services, *
  *
         Defendants.   *

_____

Submitted:  September 21, 1998

Filed: June 29, 1999
_____

Before BOWMAN,[1] Chief Judge, WOLLMAN, and KELLY,[2] Circuit Judges.

_____

[1]The Honorable Pasco M. Bowman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999. He has been succeeded by the Honorable Roger L. Wollman.

[2]The Honorable John D. Kelly died on October 21, 1998.  The case is being decided by the remaining members of the panel pursuant to 28 U.S.C. § 46(6) and 8th

_____

WOLLMAN, Chief Judge.

The South Harrison R-II School District (District) appeals from the judgment entered by the district court on the verdict in favor of Phillip Padilla in this 42 U.S.C. § 1983 action. A jury found that Padilla's First Amendment rights were violated when the District voted not to renew his contract because of statements he made while testifying in a criminal trial. The District also appeals from the district court's award of attorney fees and costs. We reverse.

## I.

Padilla was hired by the District in August 1991 as a junior high physical education teacher and a high school athletic coach. He was considered a probationary teacher under Missouri law because he had less than five years of teaching experience. See Mo. Rev. Stat. § 168.126. Probationary teaching contracts must be renewed by the school board on an annual basis. The school board offered, and Padilla accepted, contracts to teach and coach for the 1992-93 and 1993-94 school years.

In late 1992 and early 1993, a long-time teacher and coach in the District was accused of and eventually pleaded guilty to sodomizing two boys and sexually abusing two other boys between 1989 and 1992. During this same period, Padilla and his wife learned that a female high school student, whom we shall refer to as Jane Doe, was boasting to her friends about her infatuation with Padilla. Students and other community members reported that Ms. Doe fantasized about Padilla and dreamed of having a sexual relationship with him. At a party hosted by one of her classmates on December 14, 1992, Ms. Doe described a sexual encounter with a male classmate.

_____

Cir. R. 47E.

-3-

Minutes later, Ms. Doe repeated the story but said that it was Padilla with whom she had had the sexual encounter. She also wondered aloud whether she would ruin Padilla's teaching career and stated that she dreamed of breaking up the newly wed Padillas' marriage, and, if that happened, whether there would be any future for Padilla and her. Ms. Doe also feigned a sexual orgasm and described an alleged sexual encounter between Padilla and herself.

The party-giving classmate's mother and other high school students in attendance witnessed Ms. Doe's actions. Concerned about Padilla's alleged conduct, the mother reported the incident to Ed Musgrove, the District superintendent, the next day.

Upon hearing the rumors about Ms. Doe's comments and actions at the party, Padilla asked Musgrove whether he, Padilla, needed to do anything about the situation. Musgrove told Padilla not to worry about the rumors and stated that Padilla had Musgrove's confidence and support. Padilla met with Ms. Doe's parents in early January 1993, following which he met again with Musgrove, this time to request a meeting with the administration and the Doe family. Musgrove replied that such a meeting was unnecessary because Padilla had the full support of Musgrove and the school board. Padilla met with Musgrove again on February 11, 1993, whereupon Musgrove told him that "you don't have to worry about it . . . it's water under the bridge . . . just go on."

That same day, Musgrove received formal allegations of sexual misconduct from Ms. Doe that named Padilla as the perpetrator. On the basis of those allegations, Musgrove served Padilla with a letter of suspension that night which placed Padilla on a paid leave of absence pending investigation of his alleged improper conduct with minor female students and instructed him to avoid any contact with students during the investigatory period.

Fifteen days later, Padilla was served with a six-count notice of charges and a notice of hearing pursuant to Mo. Rev. Stat. § 168.116. The notice of charges alleged that Padilla had engaged in immoral conduct, as that term is defined by Mo. Rev. Stat. § 168.114, had made suggestive comments of a sexual nature to a minor student, had engaged in inappropriate sexual contact with a minor student, and had engaged in inappropriate sexual intercourse with a minor student. The notice of hearing informed Padilla that he had ten days in which to request a formal hearing before a decision would be made whether to terminate his teaching contract based on the information contained in the notice of charges. At Padilla's request, a public hearing was held at the South Harrison High School on March 22 and 23, 1993.

On April 5, 1993, the school board met in executive session to decide Padilla's fate. Thereafter, the school board issued findings of fact, conclusions of law, and a decision. Although a majority of the board found that Padilla had made sexually suggestive comments to a female student, the board ultimately found that there was no competent or substantial evidence that Padilla had engaged in any immoral conduct. Accordingly, the board reinstated Padilla and also agreed to renew his teaching and coaching contract for the following academic year.

Several days before the board's April 5 executive session, the Harrison County prosecuting attorney, whose law-partner wife was counsel to the school board, charged Padilla with felony and misdemeanor sexual assault on the basis of the same information that Ms. Doe had provided to Musgrove. In August 1993, a jury acquitted Padilla on the misdemeanor charges. (He was acquitted on the felony charge in June of 1994.)

The speech at issue in this case occurred on the second day of Padilla's August 1993 trial. Over repeated objections, the prosecuting attorney asked Padilla on cross-examination whether it was appropriate for a person in his position to have a sexual relationship with a minor. Padilla replied, "Yes, I'd imagine it would be acceptable.

If they're not in school or they're out of school and so long as the relationship was consensual." The prosecutor also asked Padilla whether he had a problem with extramarital affairs. Padilla responded, "I suppose not." The prosecutor then asked whether Padilla had ever had an extramarital affair, to which Padilla responded, "Not that I'm aware of."[3]

Padilla's testimony was the subject of a school board meeting in September of 1993, following which the board sent Padilla a letter of caution setting forth the board's concern about Padilla's attitude toward teachers having sex with students. Padilla's attorney responded by informing the board that Padilla's testimony constituted speech protected by the First Amendment. There was no further correspondence between the board and Padilla until the following spring.

In April of 1994, the school board considered the contracts for all probationary teachers for the following school year. Despite a recommendation-with-reservation from the principal that the board rehire him, the board voted not to renew Padilla's teaching and coaching contract. Accordingly, Musgrove sent Padilla a letter informing him that he would not receive a contract for the 1994-95 school year. The letter stated that Padilla was not rehired because a majority of the board believed that he had "engaged in conduct prejudicial to the best interests of the school district by violating district policies with regard to sexual harassment and to relationships with students." Appellee's App. at 291. Further, the letter stated that "you also were terminated based on complaints that have been received by board members concerning your conduct and public statements." Id.

---

[3]The parties have not favored us with a transcript of the trial, relying instead upon the witnesses' recollections and on the accounts of the trial that appeared in two local newspapers.

Padilla then filed this action against the District, Musgrove, and members of the school board. Padilla's allegations included a claim that the District violated his First Amendment rights by not renewing his contract on the basis of his trial testimony, which he alleged was protected speech.

The district court dismissed all but the free speech claim, as well as dismissing Padilla's claims against Musgrove and the individual school board members. At the conclusion of a five-day trial in late May 1997, the jury returned a verdict in favor of Padilla and awarded him $385,000 in compensatory damages. The district court denied the District's post-trial motions and granted Padilla's motion for an award of attorney fees and costs pursuant to 42 U.S.C. § 1988(b).

**II.**

We use a two-step process to determine whether a public employee's speech is entitled to constitutional protection. Initially, we must find that an employee's speech can be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983). If it does, we must balance "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). These two questions present matters of law for the court to decide. See Dunn v. Carroll, 40 F.3d 287, 291 (8th Cir. 1994). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context" of the speech, and that speech must relate to some "matter of political, social or other concern to the community." Buazard v. Meridith, 172 F.3d 546, 548 (8th Cir. 1999) (quoting Connick, 461 U.S. at 138).

Padilla's case is not a typical protected speech case, for the speech in question was compelled rather than volunteered. (The propriety of the trial court's ruling

requiring Padilla's answers to what appear to be highly irrelevant questions is not a matter for us to decide.)

Indeed, it is the compelled nature of the speech that forms the basis of Padilla's suit. He argues that one who testifies under compulsion in a judicial proceeding may not be penalized for the views expressed during that proceeding. He cites Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989), in which the court stated:

> When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern. "Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth." [citation omitted] We would compromise the integrity of the judicial process if we tolerated state retaliation for testimony that is damaging to the state. If employers were free to retaliate against employees who provide truthful, but damaging, testimony about their employers, they would force the employees to make a difficult choice. Employees either could testify truthfully and lose their jobs or could lie to the tribunal and protect their job security.

Although we have no disagreement with this general proposition, we conclude that it does not apply in the present case.

The question before us is whether the compelled expression of a teacher's opinion on the propriety of a sexual relationship between a teacher and a nonstudent minor is entitled to First Amendment protection. We conclude that it is not, for such testimony does not relate to the teacher's legitimate disagreement with a school board's policies and thus does not address a matter of public concern. School boards not only have a legitimate interest in forbidding and seeking to prevent teacher-student sexual relationships, they have a duty to do so, in default whereof they may be subjected to suits for substantial damages. See, e.g. Kinman v. Omaha Public Sch. Dist., 171 F.3d

607 (8th Cir. 1998). Indeed, school boards have a similar duty to prevent student-on-student sexual contacts. See Davis v. Monroe County Bd. of Educ., 1999 WL 320808 (U.S. May 24, 1999).

It would be a strange regime that would permit a school board to be held subject to liability for failing to adopt and enforce a policy seeking to forbid and prevent teacher-student sexual contacts and yet at the same time be held subject to a suit for damages by a teacher who expressed a view that it is acceptable to have a sexual relationship with a nonstudent minor. One can imagine the difficulty a school board might have in trying to persuade a jury that a teacher holding such an opinion posed no danger of violating the board's prohibition of such relationships.

In sum, Padilla's compelled testimony did not relate to a matter of public concern, for it expressed no legitimate disagreement with the school board's policy vis-a-vis teacher-student sexual relationships. There may be other teachers across the land who agree with Padilla's views, but a court would be hard put to hold that the expression of those views would immunize a teacher from an adverse employment decision by a school board.

It may very well have been unfair for the prosecuting attorney to ask the questions that compelled the answers that gave rise to this lawsuit. Thus, an injustice may have been done to Padilla in the state court proceedings. If so, "it is not one actionable under 42 U.S.C. § 1983 on a free-speech theory." Buazard, 172 F.3d at 549.

In light of our holding, we need not discuss the District's contention that the district court erred in refusing to admit a video tape of Padilla's appearance on a nationally syndicated television talk show, during which he is alleged to have discussed the events giving rise to this lawsuit.

The judgment is reversed, as is the order awarding Padilla attorney fees and costs, and the case is remanded to the district court with directions to dismiss the complaint.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.