Norberto Lopez CRUZ,
et al., Plaintiffs,

v.

**PUERTO RICO POWER AUTHORITY,**
et al., Defendants.

Civil No. 11–2023(DRD).

United States District Court,
D. Puerto Rico.

July 17, 2012.

Eileen Landron–Guardiola, Luis A. Rodriguez–Munoz, Eduardo A. Vera–Ramirez, Guaynabo, PR, Carlos Del–Valle–Cruz, Del Valle Law, Old San Juan, PR, for Plaintiffs.

Angel A. Valencia–Aponte Maraliz Vazquez–Marrero, Departamento De Justicia, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

DANIEL R. DOMÍNGUEZ, District Judge.

## I. INTRODUCTION

Plaintiff Norberto Lopez Cruz ("Plaintiff") filed an Amended Complaint on October 14, 2011 (Docket No. 29) against Defendants Puerto Rico Power Authority ("PREPA"), Otoniel Cruz Carrillo ("Cruz"), Luis A. Soto De Jesus ("Soto"), Hiran Gomez Cañals ("Gomez"), all in their individual capacities (collectively, the "Defendants"), alleging retaliation and harassment. Plaintiff files this action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, claiming violations of the First Amendment. Plaintiff's additional claims arise under the laws of Puerto Rico which are attached to the instant case via

the exercise of the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff has been an electrical line operator for PREPA for most of his career. On October 20, 2008, he filed a report with the Occupational Safety and Health Administration ("OSHA") stating that a fellow co-worker, Bienvenido Feliciano, was not qualified for his position which required working with live electrical lines.

As a result of his report to OSHA, Plaintiff claims he has been subject to numerous instances of work-related harassment. From November 21, 2008 to September 10, 2010, Plaintiff was the target of at least eight different instances of administrative investigations. None of these investigations resulted in any disciplinary action.

On August 28, 2009, Defendant Gomez, one of Plaintiff's supervisors, berated Plaintiff publicly. In response, Plaintiff filed an administrative complaint through his employee's union on December 3, 2009. According to Plaintiff's complaint, the claim "has been awarded"[1] (Docket No. 29, page 6).

Plaintiff avers that he was ordered to work diverse tasks that, according to state and federal norms, require support personnel; Plaintiff asserts that Defendants ordered Plaintiff to work the tasks without the aid of other co-workers.

On August 10, 2010, Plaintiff obtained a protective order in state court against Defendants and, as a result, Defendant was relocated to San Sebastian. Upon his arrival at San Sebastian, however, the supervisor in charge refused to acknowledge the transfer and sent Plaintiff back to his previous job location. Due to this continued harassment, Plaintiff alleges that he was forced out of work for more than a month because the State Insurance Fund determined that he was emotionally unfit to work. Subsequently, he received a permit to continue working and Plaintiff continued to seek treatment for his emotional condition.

On December 12, 2010, Plaintiff was promoted to Electric Line Operator II in Aguadilla, Puerto Rico. However, Plaintiff alleges that said promotion has not been made official by PREPA's human resources department. As a result, Plaintiff has continued to receive his original salary, which is lower than the salary of an Electric Line Operator II.

## III. PROCEDURAL HISTORY

On April 23, 2012 co-Defendant PREPA filed a motion to dismiss (Docket No. 41) arguing that Plaintiffs have failed to put forth a plausible Section 1983 claim or plead the requisite elements for a First Amendment claim. PREPA also alleges that Plaintiff's claims are barred by the statute of limitation because the latest alleged instance of retaliation occurred on September 10, 2010 and the instant matter was filed on October 14, 2011.[2]

On April 27, 2012, co-Defendants Gomez and Soto, also Plaintiff's supervisors, filed a motion to dismiss (Docket No. 44). This motion to dismiss was largely a reiteration of PREPA's prior allegation that Plaintiff's claims were time barred. Additionally, co-Defendants Gomez and Soto aver that, even if the claims were timely, they do not

---

1. The Court is unclear as to the meaning of the claim being "awarded."

2. The statute of limitation for Section 1983 causes of action is borrowed from the forum state's statute of limitations for personal injury actions, which for Puerto Rico is one year. *See Moran Vega v. Cruz Burgos*, 537 F.3d 14, 21 (1st Cir.2008).

meet the standards for a First Amendment retaliation claim.

On May 10, 2012, Plaintiffs filed an opposition to PREPA's motion to dismiss (Docket No. 45). Therein, Plaintiffs argue their complaint draws a plausible inference that Defendants have deprived Plaintiff of his constitutional rights under the First Amendment (Docket No. 45, page 4). Furthermore, Plaintiffs assert that the Defendants' conduct has been continuous and unceasing and, "thus constitute[s] a continuing violation and thus all claims have been brought with the required statute of limitations period" (Docket No. 45, page 12).

On May 15, 2012, Plaintiffs opposed co-Defendant's Gomez and Soto's motion to dismiss (Docket No. 48). Plaintiff avers that Gomez, Soto, and PREPA conspired to violate Plaintiff's First Amendment, Fifth Amendment and Fourteenth Amendment rights. Additionally, Plaintiffs restate that the complaint raises a claim above the speculative level necessary to satisfy the applicable pleading standard.

## IV. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937. "Context based" means that plaintiff must allege facts that comply with the basic elements of the cause of action. *See Iqbal,* 556 U.S. at 671–672, 129 S.Ct. 1937 (explaining the basic elements of a *Bivens* claim and thereafter concluding that facts were not sufficiently provided, leaving only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009)(quoting *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937)(internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.* Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009).

A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions are inadequate as well. *Penal-*

bert–Rosa v. Fortuno–Burset, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596.

## V. ANALYSIS

### A. Statute of Limitations Claims

In Puerto Rico, the appropriate limitations period for Section 1983 claims is one year. See 31 L.P.R.A. § 5141 (2008); see also Moran Vega, 537 F.3d 14, 21; Sanjurjo Santiago v. Metro. Bus. Auth., 2009 WL 1935848, at *4 (D.P.R.2009). In their amended complaint, however, Plaintiffs claim that Lopez Cruz was subject to "continuous, unceasing, and systematic harassment" (Docket No. 45, page 8). Plaintiffs aver that once they set forth facts showing a continuing violation, the statute of limitations begins to accrue after the last violation concluded (Docket No. 45, page 12).

■■■ The continuing violation doctrine is an exception to the statute of limitations that allows an employee to seek damages for claims that would otherwise be time-barred if they are deemed part of an ongoing series of discriminatory acts and there is "some violation within the statute of limitations period that anchors the earlier claims." O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir.2001). The First Circuit has identified several criteria in determining the sufficiency of a serial continuing violation claim. In O'Rourke, the First Circuit found that said inquiry has three prongs: first, "if the subject matter of the discriminatory acts is sufficiently similar that there is a substantial relationship between the otherwise untimely acts and the timely acts;" second, "are the acts isolated and discrete or do they occur with frequency or repetitively or continuously;" and finally, "are the acts of

sufficient permanence that they should trigger an awareness of the need to assert one's rights?" (internal quotations omitted). Id. at 731.

■■■ In applying that three-prong inquiry to Plaintiffs' situation, the Court finds that the continuing violations doctrine is not satisfied. Plaintiff was subject to eight administrative investigations from November 21, 2008 to September 10, 2010; these investigations ultimately resulted in no disciplinary action. Plaintiff also alleges his promotion has not been recognized as of December 12, 2010 and that Plaintiff is being undercompensated for his duties. These last two claims were brought well within the limitations period and are thus clearly timely. However, all eight administrative investigations and the incident where Defendant Gomez publicly berated Plaintiff are time-barred because they occurred prior to a year before the instant action commenced, or, more specifically, October 14, 2010. Hence, the only way that Plaintiff's time-barred claims could be properly considered is if the two timely claims anchor the time-barred allegations. O'Rourke, 235 F.3d at 730. The Court, however, must first determine if any of the time-barred claims are "sufficiently similar" to the timely claims. Id. The Court finds that they are not and, thus, Plaintiff's claim fails on the first prong of the continuing violations analysis.

There are no real similarities between administrative investigations and Plaintiff's unrecognized promotion. The eight investigations, in and of themselves, are similar and are part of a definite pattern. The fact that the investigations all occurred within a relatively short span of time and all had a similar outcome strengthens this finding. However, these frequent investigations and co-Defendant Gomez's public chastising of Plaintiff have very little in common with an unrecognized promotion.

The lack of recognition of a promotion alone is not sufficiently similar to Defendants' previous acts against Plaintiff as to constitute an anchoring act to save Plaintiff's untimely claims. The Court declines to find that an unrecognized promotion is sufficiently similar to eight allegedly unwarranted internal administrative investigations.

The Court next turns to Plaintiff's allegations of reduced pay. The Court finds that Plaintiff's claim of reduced pay is also not sufficiently similar to any of the untimely claims, mainly the internal investigations. An inferior compensation claim is certainly similar to the unrecognized promotion. However, it is not similar to the previously discussed instances of harassment. It follows that neither of the two timely claims meet the sufficient similarity standard and all allegations that occurred before October 14, 2010 are barred by the statute of limitations.

Accordingly, the Court finds that the administrative investigations and the public reprimands by Defendants are time barred; the Court will conduct the remainder of its Rule 12(b)(6) analysis on the basis of Plaintiff's two remaining timely claims, the allegedly unrecognized promotion and the claim of inferior pay.

### B. First Amendment Claim[3]

██ "Public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir.2007)(citing

---

**3.** The Court notes that OSHA contains a retaliation provision stating that "[n]o person shall discharge or in any manner discriminate against any employee because such employee has filed any [OSHA] complaint...." 29 U.S.C. § 660(c)(1). The provision also states that within thirty days after such a violation occurs the person may file a complaint with the Secretary of OSHA alleging the adverse act. Upon receipt of such complaint, the Secretary shall investigate the matter's legitimacy as he deems necessary and determine whether he shall bring an action in the appropriate U.S. District Court. 29 U.S.C. § 660(c)(2).

While neither party has addressed whether this OSHA provision preempts Plaintiff's First Amendment retaliation claim, the Court, nevertheless, notes that a section 1983 may be foreclosed by a more specific and more comprehensive provision in a congressional act. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252–53, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009)("In cases in which the § 1983 claim alleges a constitutional violation, lack of congressional intent may be inferred from a comparison of the rights and protections of the statute and those existing under the Constitution. Where the contours of such rights and protections diverge in significant ways, it is not likely that Congress intended to displace § 1983 suits enforcing constitutional

rights."); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."); *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 127, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005) (holding that the Telecommunications Act-by providing a judicial remedy different from § 1983–precluded resort to § 1983); *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) ((holding that Education for All Handicapped Children Act created a comprehensive remedy that barred application of § 1983) (abrogated by Congress' 1986 amendments to the IDEA); *see, e.g., Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 763 (3d Cir.1995) (holding that IDEA overruled *Smith* ); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987) (same); *cf. Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 117 (1st Cir.2003) (declining to address whether an IDEA cause of action could also be implied under 42 U.S.C. § 1983.)); *see also Sánchez v. United States*, 671 F.3d 86, 95 (1st Cir.2012) (" 'It is hard to believe,' the Court stated, 'that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies.' ") (quoting *Sea Clammers*, 453 U.S. at 20, 101 S.Ct. 2615.).

*Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); *see San Diego v. Roe,* 543 U.S. 77, 82, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) (per curiam) ("Were [public employees] not able to speak on [the operation of their employers], the community would be deprived of informed opinions on important public issues. The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it.") (citation omitted). "[P]ublic employers should, 'as a matter of good judgment,' be 'receptive to constructive criticism offered by their employees.'" *Garcetti v. Ceballos,* 547 U.S. 410, 425, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (quoting *Connick,* 461 U.S. at 149, 103 S.Ct. 1684). However, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951.

■ "To establish free-speech retaliation, a plaintiff must show that he spoke as a citizen on a matter of public concern, that his interest in speaking outweighed the government's interest, as his employer, in promoting the efficiency of the public services it provides ... and that his speech was a substantial or motivating factor in his firing." *Rodríguez v. Municipality of San Juan,* 659 F.3d 168, 180 (1st Cir.2011)(internal quotations and citations omitted). "If all three parts of the inquiry are resolved in favor of the plaintiff, the employer may still escape liability if it can show that 'it would have reached the same decision even absent the protected conduct.'" *Decotiis v. Whittemore,* 635 F.3d 22, 29–30 (1st Cir.2011)(quoting *Rodríguez–Garcia v. Miranda–Marin,* 610 F.3d 756, 765–66 (1st Cir.2010)).

We begin with the first element and address whether Lopez Cruz spoke "as a citizen" before assessing whether his speech was "on a matter of public concern." *See Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)(recognizing that the first step has two subparts: whether the employee spoke as a citizen and whether the speech was on a matter of public concern). In addressing the "as a citizen" requirement, the Supreme Court stated in *Garcetti* that "the controlling factor" is whether the employee's speech was made "pursuant to" his official duties. *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951. The *Garcetti* Court held that *"when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id.* (emphasis added). The Supreme Court further stated that:

> Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over [speech] the employer itself has commissioned or created.

*Garcetti,* 547 U.S. at 421–422, 126 S.Ct. 1951. "The Garcetti Court defined speech made 'pursuant to' a public employee's job duties as 'speech that owes its existence to a public employee's professional responsibilities.'" *Weintraub v. Bd. of Educ.,* 593 F.3d 196, 203 (2d Cir.2010) (quoting *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951). The proper inquiry into whether an employee's speech is "pursuant to" his official duties is "a practical one." *Garcetti,* 547 U.S. at 424, 126 S.Ct. 1951.

■ In the wake of *Garcetti,* circuit courts across the nation have held that

speech is "pursuant to official duties" if the speech is in furtherance of such duties. *Weintraub,* 593 F.3d at 202; *Williams v. Dallas Indep. Sch. Dist.,* 480 F.3d 689, 693–694 (5th Cir.2007)(holding that an Athletic Director spoke pursuant to his official duties when he wrote memoranda to his school principal and office manager requesting information about the use of funds collected at athletic events in order to perform his duties of buying sports equipment, taking students to tournaments, and paying their entry fees; such "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties."); *Renken v. Gregory,* 541 F.3d 769, 773 (7th Cir.2008) (holding that when a professor complained to university officials about the difficulties he encountered in administering an educational grant he had been awarded, he was speaking as a faculty employee because the grant, though not necessarily a formal requirement of his job, was "for the benefit of students" and therefore "aided in the fulfillment of his teaching responsibilities."); *see,* e.g., *Phillips v. City of Dawsonville,* 499 F.3d 1239, 1242 (11th Cir.2007); *Brammer–Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1204 (10th Cir.2007); *Freitag v. Ayers,* 468 F.3d 528, 546 (9th Cir.2006); *Battle v. Bd. of Regents,* 468 F.3d 755, 761 (11th Cir.2006). We wholeheartedly adopt the Second Circuit's holding in *Weintraub* that "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub,* 593 F.3d at 203.

Following *Garcetti,* the First Circuit has recently instructed that in a First Amendment retaliation case that "a court must [first] ask, 'what are the employee's official responsibilities?,' and second, 'was the speech at issue made pursuant to those responsibilities?' " *Decotiis,* 635 F.3d at 31. The Circuit has also provided several non-exclusive factors for the second inquiry: (1) whether the employee was commissioned or paid to make the speech in question; (2) the subject matter of the speech; (3) whether the speech was made up the chain of command; (4) whether the employee spoke at her place of employment; (5) whether the speech gave objective observers the impression that the employee represented the employer when she spoke (lending it "official significance"); (6) whether the employee's speech derived from special knowledge obtained during the course of her employment; and (7) whether there is a so called citizen analogue to the speech. *Decotiis,* 635 F.3d at 32 (internal citations omitted).

Plaintiff has been a career employee of PREPA as an electrical line operator. While Plaintiff alleges a recent promotion, he worked as an electrical line operator for PREPA at all relevant times. Plaintiff does not elaborate on his duties; however, the Court assumes that, as a PREPA employee, Plaintiff was charged with safely operating and maintaining live electrical lines. Plaintiff's First Amendment claim is derived from the fact that Plaintiff filed a report to OSHA stating that, "an individual, Bienvenido Feliciano, was not qualified to be working live electric lines" (Docket No. 29, page 4). In applying the non-exclusive factors enumerated in *Decotiis,* the Court determines that the first factor weighs in Plaintiff's favor. The Court acknowledges that Plaintiff was "not literally authorized or instructed to make the speech at issue." *Decotiis,* 635 F.3d at 32. Notwithstanding, the Court notes that "it is not determinative that an employee was not required to make the speech at issue." *Decotiis,* 635 F.3d at 33.

The third, fourth, and seventh factors also weigh in Plaintiff's favor. With re-

spect to the third factor, Plaintiff's speech was not made up the chain of command. Instead, his speech was made to an outside independent government agency in charge of employees' safety. Although the speech was seemingly intended to affect management's actions as it concerned a co-worker's qualifications, the speech was nevertheless made outside of PREPA's chain of command. Furthermore, his speech was made in an OSHA report and thus was not made at his place of employment, fulfilling the fourth factor. Although Plaintiff does not specify how he filed his report, the Court assumes that the report was not filed at PREPA headquarters as it was to an outside federal agency. Also, since OSHA is a public agency, any citizen can file an OSHA claim on their website or by phone. The existence of a "citizen analogue," or a channel where a citizen can express himself in a similar manner, favors Plaintiff with respect to the seventh factor. *Id.* at 32.

The remaining factors, however, do not favor Plaintiff. For the second and sixth factors, the subject matter of the speech in question concerned Plaintiff's employment and Plaintiff's speech was derived from special knowledge he acquired while in the course of his employment.

*Garcetti* is directly instructive on the fifth factor, whether the speech gave objective observers the impression that the employee represented the employer when he spoke (lending it "official significance"). In *Garcetti*, the Supreme Court held that a public employee had written a memo "pursuant to [his] official duties" because "that is part of what he ... was employed to do." *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951. The Supreme Court contrasted *Garcetti* to *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), where the speaker's "letter to the newspaper had no official significance and

bore similarities to letters submitted by numerous citizens every day." *Garcetti*, 547 U.S. at 422, 126 S.Ct. 1951. The Court finds that the speech in question in the instant matter is more akin to the internal memo in *Garcetti* than a letter to a newspaper as in *Pickering*. Like in *Garcetti*, and unlike in *Pickering*, Plaintiff's speech was not directed towards mediums designed to reach the public at large, although it is likely that complaints to OSHA are public information. While this fact is not dispositive, the Court determines that *Garcetti* supports the conclusion that the fifth factor favors a finding of "official significance" as to Plaintiff's speech because he was presumably employed to ensure the safe and efficient operation of electric lines.

■ With four of the seven *Decotiis* factors supporting the Plaintiff, we find that his expressions were not made pursuant to his official duties as an electrical line operator. Plaintiff acted as a citizen, and not pursuant to his duties, when he notified an outside public agency of a workplace safety concern. *Garcetti*, 547 U.S. at 422, 126 S.Ct. 1951; *see e.g.*, *Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)(stressing that the Supreme Court's "repeated emphasis in Pickering on the right of a public employee 'as a citizen, in commenting upon matters of public concern,' was not accidental")(quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731); *Buazard v. Meridith*, 172 F.3d 546, 548–49 (8th Cir.1999) ("Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment"); *Gillum v. City of Kerrville*, 3 F.3d 117, 120–21 (5th Cir. 1993) ("We do not focus on the inherent 'importance' of the subject matter of the speech, but on the extent to which the terminated employee spoke as a citizen or

employee...."); *Thomson v. Scheid,* 977 F.2d 1017, 1020 (6th Cir.1992) ("First Amendment protection extends to a public employee's speech when he speaks as a citizen on a matter of public concern....").

Relying on the aforementioned cases, the Court determines that Lopez Cruz's speech at issue here was not uttered in furtherance of his job duties and instead, Plaintiff spoke as a private citizen. Our inquiry on the criteria leads us to the conclusion that, although Lopez Cruz's speech "owes its existence to [his] professional responsibilities" as a line operator for PREPA, he spoke on a safety matter as a concerned citizen. *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951.

▬▬▬▬ As Plaintiff's speech was made as a citizen, we must now address the second query: whether his speech was on "a matter of public concern." *Id.* The Supreme Court has defined "a matter of public concern" as one that "relat[es] to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. 1684. *Pickering* requires arriving at a balance between the interests of the Plaintiff, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* at 150–51, 103 S.Ct. 1684. The record before us is largely bereft of facts that would clarify whether Plaintiff's speech concerned a public matter. Nevertheless, the Court assumes that an under

qualified electrical line worker could pose a serious safety risk to himself and his co-workers and could even deprive an entire community of electricity. Although more facts are needed to assert the exact nature of Plaintiff's speech, viewing the available facts in the light most favorable to Plaintiff, as we must at the motion to dismiss stage, the Court finds that it is plausible that Plaintiff's speech was on a matter of public concern.[4] Although the matter is close as to the matter of public versus private speech, the Court hereby **DENIES** Defendant's motion to dismiss as to Plaintiff's First Amendment retaliation claim.

### C. Fifth Amendment Claim

▬▬▬ The due process clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. The Fifth Amendment applies to actions of the federal government, not those of private individuals or states. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). Plaintiff fails to allege any instance of federal action that would trigger Fifth Amendment protection. As such, Plaintiff's Fifth Amendment claim is wholly without merit, to say nothing of a potential Rule 11 violation for Plaintiff's counsel's failure to conduct a reasonable inquiry before bringing said claim. Accordingly, the Court hereby easily **DISMISSES** Plaintiff's Fifth Amendment claim with prejudice.

### D. Fourteenth Amendment

### i. Substantive Due Process

▬▬▬▬ To establish a substantive due process violation, "the plaintiff must show

---

4. With the limited facts presently before the Court, we find that Plaintiff's speech was a substantial or motivating factor in the actions against him. *Rodríguez,* 659 F.3d 168, 180. However, the Court invites further briefing on that subject in order to engage in a more proper and fulsome *Pickering* balancing analysis at a later juncture.

both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property." *Pagán v. Calderón,* 448 F.3d 16, 32 (1st Cir.2006).[5] The alleged conscience shocking conduct must "do more than offend some fastidious squeamishness or private sentimentalism...." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Instead, the state action must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Acts that shock the conscience must be "truly outrageous, uncivilized, and intolerable," *Hasenfus v. La-Jeunesse,* 175 F.3d 68, 72 (1st Cir.1999), and "the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error," *Amsden v. Moran,* 904 F.2d 748, 754 n. 5 (1st Cir. 1990). "The burden to show state conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme.'" *J.R. v. Gloria,* 593 F.3d 73, 80 (1st Cir.2010)(quoting *DePoutot v. Raffaelly,* 424 F.3d 112, 119 (1st Cir.2005)).

We reiterate that the "shocks the conscience" hurdle is a high one reserved for "truly horrendous situations." *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir.1992); *see County of Sacramento,* 523 U.S. at 848–49, 118 S.Ct. 1708, (The Supreme Court has "rejected the lowest common denominator of customary tort liability as any mark of

sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). "Holding otherwise would lower the very high threshold for constitutional wrongdoing and transform the Constitution into 'a surrogate for local tort law or state statutory and administrative remedies.'" *Joubert–Vazquez v. Alvarez–Rubio,* 820 F.Supp.2d 289, 297 (D.P.R.2011)(quoting *Cummings v. McIntire,* 271 F.3d 341, 346 (1st Cir.2001)) (citations omitted).

■■■ Plaintiff fails to meet this high standard as none of the alleged conduct shocks the conscience. The First Circuit, in *Cummings,* collects a series of cases where plaintiffs have indeed established the requisite level of egregious, conscious shocking behavior to substantiate a substantive due process violation. 271 F.3d at 346. Such examples include where a student was blinded in one eye when a coach intentionally struck him in the head with a metal weight, *Neal v. Fulton County Bd. of Educ.,* 229 F.3d 1069, 1076 (11th Cir. 2000); a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years, *Morris v. Dearborne,* 181 F.3d 657, 668 (5th Cir.1999); rape by a police officer in connection with a car stop, *Rogers v. City of Little Rock,* 152 F.3d 790, 797 (8th Cir.1998); a 57–day unlawful detention in the face of repeated requests for release, *Armstrong v. Squadrito,* 152 F.3d 564, 582 (7th Cir.1998); police officers aiding a third-party in shooting the plaintiff, *Hemphill v. Schott,* 141 F.3d 412, 419 (2d Cir. 1998); an intentional assault by a police

---

**5.** The First Circuit has not adopted a rigid two-step analysis in which one showing necessarily must precede the other, but the First Circuit typically first examines whether the

acts alleged were conscience-shocking. *Harron v. Town of Franklin,* 660 F.3d 531 (1st Cir.2011).

officer who struck a pretrial detainee twice in the head and threatened to kill him, *Johnson v. Glick*, 481 F.2d 1028, 1029–30 (2d Cir.1973); and a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her, *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir.1987). These cases illuminate "serious physical intrusions or sustained abuse" that typify substantive due process violations. *Cummings*, 271 F.3d at 346.

We conclude that Plaintiff's allegation that his promotion has gone unrecognized, and thus he is underpaid, falls well short of this standard. Defendants' alleged conduct is not so egregious as to shock the contemporary conscience nor is it "truly outrageous, uncivilized, and intolerable." *Hasenfus*, 175 F.3d at 72.

### ii. Procedural Due Process

■■■■ There is no mechanical formula by which the sufficiency of procedural due process may be determined. To the contrary, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Therefore, courts usually conduct a balancing test where they consider a number of factors: the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Morrissey*, 408 U.S. at 481, 92 S.Ct. 2593; *see also Memphis Light, Gas Water Div. v. Craft*, 436 U.S. 1, 17–18, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). When a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: "how and when" the alleged deprivation was effected. *See Barry*

*v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *see also Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Whether the deprivation (*e.g.*, undercompensation) was, itself, erroneous is beside the procedural due process point. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)

■■■■ The First Circuit has held that, in order for a plaintiff to state a plausible procedural due process claim, he must (1) allege facts that support a determination that the plaintiff has a property interest, as defined by state law; and (2) that the conduct complained of, committed under color of state law, has deprived the individual of that property interest without constitutionally adequate procedure. *PFZ Properties v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991). The Due Process Clause of the Fourteenth Amendment protects government employees "who possess property interests in continued public employment." *Galloza v. Foy*, 389 F.3d 26, 33 (1st Cir. 2004) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Nevertheless, the Constitution does not itself create property rights. *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 350 (1st Cir. 1992). Rather, the question of whether a public employee possessed a protectable property interest in a particular job is governed by local law and the terms and conditions of the employment arrangement. *See Ortiz–Pinero v. Rivera–Arroyo*, 84 F.3d 7, 17 (1st Cir.1996); *Rivera–Muriente*, 959 F.2d at 352. To have a property interest in a benefit, such as an increase in salary or a promotion, a person clearly must have more than an abstract need or desire for said benefit. Thus, Plaintiff must have more than a unilateral expectation of receiving his promotion and must have a legitimate claim of entitlement

to it. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

 The Court finds that Plaintiff has more than a unilateral expectation of a promotion and an increase in salary. The record clearly states that Plaintiff was offered and awarded a promotion that included a stipulation for higher pay. In not actually being placed in the promoted position within a reasonable time, and thus receiving his increased salary, Plaintiff has been plausibly deprived of a protected property right. Thus, Plaintiff satisfies the first prong of the First Circuit's test for a procedural due process violation.

The second prong of the test also favors Plaintiff, although the pleadings are very light on supporting facts,[6] because Plaintiff was never given any type of a hearing or other administrative mechanism that would properly remove that benefit.

Despite the dearth of relevant pled facts, taking all of Plaintiff's current allegations as true, the Court finds that Plaintiff has raised a plausible procedural due process claim. Accordingly, the Court hereby **DENIES** Defendant's motion to dismiss as to Plaintiff's Fourteenth Amendment procedural due process claim.

## VI. CONCLUSION

Based on the aforementioned reasons, Defendants' motions to dismiss (Docket Nos. 41 and 44) are hereby **DENIED** in part and **GRANTED** in part. Defendant's motions to dismiss are **DENIED** with respect to Plaintiff's First Amendment retaliation claim and Fourteenth Amendment procedural Due Process claim. However, Defendant's Motion to Dismiss are **GRANTED** with respect to Plaintiffs'

Fifth Amendment claim and Fourteenth Amendment substantive due process claims; these claims are thus are hereby **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

---

6. For instance, Plaintiff has not stated what the adequate procedure is for removing an unrecognized promotion on how long it usually takes for a promotion to be fully recognized within PREPA.